Filed 6/28/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>v.<br><br>MIN CHANG CHEN,<br><br>　　　Defendant and Appellant. | A152754<br><br>(Napa County<br>Super. Ct. No. CR161827) |

　　　Defendant Min Chang Chen, also known as Ivy Chang Chen, appeals the denial of her motion to vacate a conviction under Penal Code section 1473.7.[1]  Chen contends her trial counsel failed to properly advise her of the adverse immigration consequences of her plea agreement and that the erroneous advisement damaged her ability to meaningfully understand, defend against, and knowingly accept those consequences.  We affirm the denial of her motion.

**BACKGROUND**

　　　In May 2012, Napa Special Investigations Bureau found 262 marijuana plants growing in a house on Patricia Drive in American Canyon, following a fire at the property, where the utilities appeared to have been bypassed.  Agents traced the house to Chen and her brother, who were located and arrested.  They executed a search warrant for the search of Chen's family restaurant and residence in Vallejo.  Chen was charged with cultivating marijuana (Health & Saf. Code, § 11358) (count one); possession of marijuana for sale (Health & Saf. Code, § 11359) (count two); and theft of services (§ 498, subd. (b)) (count three).

---

[1] All statutory references are to the Penal Code unless otherwise stated.

In June 2012, Chen was arraigned on these charges and completed an arraignment form which stated, "If you are not a United States citizen, a plea of Guilty or No Contest could result in your deportation, exclusion from admission to this country, or denial of naturalization." Chen signed the form, attesting she understood its contents, and her court interpreter also signed the form, certifying it had been translated to Chen.

In July 2012, pursuant to a negotiated disposition, Chen pleaded no contest to cultivation of marijuana in violation of Health and Safety Code section 11358. Counts two and three were dismissed. The plea form indicated a maximum penalty of three years in prison for the Health and Safety Code section 11358 violation. On her plea form Chen initialed the statement regarding the consequences of her plea: "**I understand** that, if I am not a United States citizen, a plea of guilty or no contest could result in my deportation, exclusion from admission to this country, or denial of naturalization." Chen also signed the form, as did her interpreter who certified it was translated to Chen.

At the hearing, with the aid of an interpreter, the trial court asked Chen, "Did the interpreter read it to you, did you understand it, and did you sign it?" The court also asked Chen if the initials on the plea form were hers and if she had had enough time to discuss her decision with her attorney. Chen responded, "Yes." Asked if she had any questions about the contents of the plea form, Chen said, "No."

Probation's presentence report was completed with the assistance of an interpreter. In her August 2012 interview with probation following her plea, Chen "admitted her actions" and stated she and her brother learned how to grow marijuana by talking to friends and watching an online video. She acknowledged that with her brother, the two spent $20,000 on plants and supplies and did so to take care of their parents. She told probation they had no other place but in their rented house to grow the marijuana. Chen also said "she knew it was 'totally wrong and illegal,['] but her family needed money because their family restaurant was hurting financially." Chen expressed willingness to comply with any term and condition imposed by the court and hopefulness she would not have to serve jail time.

In September 2012, the trial court suspended imposition of sentence and granted Chen three years' probation. Chen was ordered to serve a 120-day term in jail; to pay various fines, fees, and restitution; and to abide by terms and conditions of probation. At the sentencing hearing, Chen acknowledged to the trial court she had reviewed all the probation conditions and accepted them.

In July 2017, Chen moved to vacate her plea and conviction under sections 1473.7 and 1016.5. She argued her trial counsel failed to properly investigate and advise her of the immigration consequences of her plea and she was prejudiced by her counsel's deficient representation.

In her declaration, Chen stated, "I was born on June 7, 1976 in Guangzhou, Guangdong, China. . . . [¶] . . . I came to America with my mother, father, and brother in 1992 and am a Permanent Resident. We left China because my grandfather was [granted] his immigration petition for my father and the whole family. I have not been back to China and am afraid of what would happen if I were to return." With "her entire life . . . in America," she did not know anyone in China. She further stated she was the primary caretaker for her 68-year-old mother and 67-year-old father. As the "main person" caring for her parents, she was concerned her parents would be unable to take care of themselves, since they were poor and had no other relatives in the United States. She added that her parents, who "[would] not survive China," could not return to China because of their advanced age. If deported, she expected to never see her parents again.

According to her declaration, she moved to Vallejo from American Canyon in late 2011 and never returned to the American Canyon house. She explained, "I had no knowledge or information about a marijuana grow operation that was conducted at our old residence . . . . I did not know anything about it." After her arrest, her brother told her he had arranged the marijuana operation, and she repeated she "knew nothing about it."

Chen described her interactions with her counsel, James McEntee. She said McEntee told her she would lose at trial and would go to jail unless she took a plea bargain. Chen stated she "was mostly concerned about being away from [her] family and

being in jail." She added, "My lawyer did not mention or discuss the immigration consequences of my plea. I was not aware that by entering that plea, I would be subject to deportation and removal and not being allowed back to America. Had I known of the severe immigration consequences of the plea bargain, I would have opted for trial even with the risk of incarceration. I would not have accepted my attorney's recommendation to plea to a violation of Health and Safety Code [section] 11358 had I known it would lead to deportation with no ability to return to the United States."

Chen's brother also provided a supporting declaration stating that after his family moved out of their American Canyon house, he began the marijuana operation there. He added, "The marijuana grow operation was completely my doing and my sister . . . did not know anything about it. She had nothing to do with it."

The People's opposition to Chen's motion included a declaration from the district attorney who handled Chen's case. He declared that multiple neighbors identified Chen at the American Canyon house approximately one week before the fire. A search of Chen's residence also yielded evidence of "handwritten marijuana information including price lists, in [her] room." He declared he would not have agreed to any lesser charges.

At the hearing on the motion, the prosecutor called Chen's trial counsel, James McEntee, as a witness. McEntee recalled representing Chen in 2012 and reviewed his file for her case. He testified that he used an interpreter to consult with Chen and learned she was not a United States citizen but a permanent legal resident. Accordingly, McEntee attempted to negotiate a disposition with the district attorney that "would be less harmful to [Chen] in that it might not have drastic adverse immigration consequences," but the district attorney would not agree to anything other than one of the two charged felonies. McEntee also consulted Chen about her immigration status. Asked whether he informed Chen of potential immigration consequences, McEntee stated: "I told her that the plea . . . had the potential to cause her to be removed from the country and denied reentry. I told her that the District Attorney would not agree to anything other than one of the two felonies that was [*sic*] alleged in the Complaint." He said he had five conversations with Chen about the plea.

4

Chen did not testify at the hearing, and her counsel called no witnesses.

The trial court denied the motion, finding defendant had not provided a sufficient basis to vacate the conviction under either Penal Code section 1016.5 or Penal Code section 1473.7. Chen now appeals from that order.

## DISCUSSION

Section 1473.7, which took effect January 1, 2017, authorizes a person who is no longer in criminal custody to move to vacate a conviction or sentence where the "conviction or sentence is legally invalid due to prejudicial error damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a plea of guilty or nolo contendere." (§ 1473.7, subd. (a)(1), added by Stats. 2016, ch. 739, § 1, West's Cal. Legis. Service, pp. 5136–5137.) Section 1473.7 was designed to address the absence under California law of any means for a person who is no longer in criminal custody to challenge a conviction on the grounds they could not meaningfully understand its actual or potential immigration consequences. (Sen. Com. on Pub. Safety, Purpose of Assem. Bill No. 813 (2015–2016 Reg. Sess.) May 10, 2016, p. 1.)

While this appeal was pending, the Legislature amended the statute to expressly make clear: "A finding of legal invalidity may, but need not, include a finding of ineffective assistance of counsel." (§ 1473.7, subd. (a)(1); Stats. 2018, ch. 825, § 2.) This amendment took effect January 1, 2019. (Stats. 2018, ch. 825, § 2.) As a clarification of the existing law, the amendment applies to Chen's motion even though it was filed before the amendment went into effect. (See *People v. Camacho* (2019) 32 Cal.App.5th 998, 1006-1009 (*Camacho*).)

Thus, a party asserting error based on an attorney's erroneous advisement need not prove the elements of a claim for ineffective assistance of counsel. (See *Camacho, supra*, 32 Cal.App.5th at p. 1008.) Rather a defendant seeking relief under section 1473.7 must show "prejudicial error" which is "not limited to the *Strickland*[2] test of

_____

[2] *Strickland v. Washington* (1984) 466 U.S. 668.

prejudice, whether there was [a] reasonable probability of a different outcome in the original proceedings absent the error." (*Id.* at p. 1009.) The question is not whether the defendant would have received a more favorable outcome in the case overall or whether the defendant would have been convicted of the same crimes even if he had proceeded to trial. (*Id.* at pp. 1010-1012.) Instead, the focus is whether, if aware of its immigration consequences, the defendant would have rejected the plea. (*Ibid.*) In some cases, a defendant "would have rejected any plea leading to deportation—even if it shaved off prison time—in favor of throwing a 'Hail Mary' at trial." (*Lee v. United States* (2017) —— U.S. ——, [137 S.Ct. 1958, 1967-1967], 198 L.Ed.2d 476 (*Lee*).) The defendant shows prejudice if he can convince the court "he would never have entered the plea if he had known that it would render him deportable." (*Camacho*, *supra*, 32 Cal.App.5th at pp. 1011-1012.)

When reviewing an order denying a section 1473.7 motion, "[w]e defer to the trial court's factual determinations if supported by substantial evidence, but exercise our independent judgment to decide whether the facts demonstrate [prejudicial error]." (*People v. Olvera* (2018) 24 Cal.App.5th 1112, 1116; see *People v. Tapia* (2018) 26 Cal.App.5th 942, 950.)

Chen contends her attorney did not adequately advise her of the immigration consequences of her plea because he failed to advise her that it was certain the underlying plea could cause her mandatory deportation. In *Padilla v. Kentucky* (2010) 559 U.S. 356, the Supreme Court held that a lawyer representing a client on a charge leading to mandatory deportation "must inform [his or] her client whether his [or her] plea carries a risk of deportation." (*Id.* at p. 374.) The record reflects that Chen's counsel, with the aid of an interpreter, told her that her plea "had the potential to cause her to be removed from the country and denied reentry." Counsel also testified that he attempted to secure the district attorney's agreement to a plea "that . . . might not have drastic adverse immigration consequences because [he] knew from consulting with her that she was not a United States citizen." He told Chen "the District Attorney would not agree to anything other than one of the two felonies that was alleged in the Complaint." Counsel seeking to

6

vacate Chen's conviction had the opportunity, but did not, cross-examine Chen's lawyer on either of these points. We will not conclude on this record that counsel McEntee, who negotiated and advised Chen to plead to the single felony, failed to provide her the ability to meaningfully understand the consequences of her plea. Chen was told the single felony had the potential to cause her removal from the United States and she would not be allowed to come back. This clearly imparts a risk of deportation as required under *Padilla* and provided Chen notice and the ability to more fully explore, if she wished, the immigration impact of her plea. Moreover, we are unwilling to require counsel to state deportation will be certain because it may not be accurate advice, even in cases where an offense qualifies for mandatory deportation under federal law.

McEntee's advice and counsel to Chen make this case materially different from those cases where counsel's performance has been held deficient. In *People v. Novoa* (2019) 34 Cal.App.5th 564, the lawyer had minimal interactions with the defendant, lacked any documentation in his case file regarding discussions of immigration concerns, and there was no evidence counsel adequately explained to the defendant the immigration consequences of pleading guilty or attempted to negotiate any plea agreement with the prosecutor. (*Id.* at pp. 587-589.) Similarly, in *In re Hernandez* (2019) 33 Cal.App.5th 530, counsel did not discuss whether a conviction could affect defendant's immigration status, had no awareness of defendant's immigration status or risk of deportation, and did not attempt to negotiate an alternative plea to avoid any adverse immigration consequences. (*Id.* at pp. 545-546.) The defense counsel in *Camacho*, *supra*, 32 Cal.App.5th 998, did not remember discussing immigration consequences with the defendant, misunderstood the effects of expungement or reductions of felonies in immigration cases, and did not explore possible alternatives to pleading an aggravated felony, and the defendant himself erroneously believed a negotiated plea calling for no time in custody would avoid making him deportable. (*Id.* at pp. 1002-1003, 1009.) Finally, in *People v. Espinoza* (2018) 27 Cal.App.5th 908, 915, counsel could not recall what advisements he discussed with defendant, and his notes did not refer to any discussion of immigration consequences. (*Id.* at p. 915.) Unlike all of these cases,

McEntee had numerous discussions with Chen about her plea, warned her of the immigration effects of her plea, and made an effort to negotiate a plea that would not have such drastic immigration consequences.

Moreover, even if a court were to conclude counsel erred, Chen cannot prevail because she cannot establish prejudice. As noted earlier, the defendant shows prejudice if he can convince the court "he would never have entered the plea if he had known that it would render him deportable." (*Camacho*, *supra*, 32 Cal.App.5th at pp. 1011-1012.) "Courts should not upset a plea solely because of *post hoc* assertions from a defendant about how he [or she] would have pleaded but for his [or her] attorney's deficiencies. Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences." (*Lee*, *supra*, 137 S.Ct. 1958 at p. 1967; see *People v. Cruz-Lopez* (2018) 27 Cal.App.5th 212, 223-224 ["An allegation that trial counsel failed to properly advise a defendant is meaningless unless there is objective corroborating evidence supporting appellant's claimed failures. . . . [T]he 'easy' claim that counsel gave inaccurate information further requires corroboration and objective evidence because a declaration by defendant is suspect by itself"].) In this context, we review the record for corroboration and consider the likelihood of success at trial, the potential consequences after a trial compared to the consequences flowing from the guilty plea, and the importance of immigration consequences to the defendant. (See *Lee*, *supra*, 137 S.Ct. at pp. 1966-1967.)

Here, Chen presented insufficient evidence that she would have rejected the plea and proceeded to trial had counsel been more explicit about its immigration consequences. There was no plausible chance she would have been acquitted. In *Lee*, the Supreme Court noted that "defendants obviously weigh their prospects at trial in deciding whether to accept a plea. [Citation.] Where a defendant has no plausible chance of an acquittal at trial, it is highly likely that he will accept a plea if the Government offers one." (*Lee*, *supra*, 137 S.Ct. 1958 at p. 1966) Chen's most recent declaration asserts that after moving to Vallejo, she never returned to her family's American Canyon house where the marijuana operation was found and that she knew

8

nothing about it, a point her brother echoes in his declaration. But the prosecutor handling Chen's case declared that multiple neighbors identified Chen at the house approximately one week before the fire prompting the investigation. He also added that investigators found evidence of "handwritten marijuana information including price lists, in [Chen's] room." Nor was an alternative plea with mitigated immigration consequences possible. The prosecutor corroborated the testimony of Chen's lawyer that he would not have agreed to a plea for any less than one of the two felonies. Thus, there is no support in the record that there could have been any plea to an immigration-neutral disposition.

The unlikelihood of acquittal or an alternative plea leaves little probability that Chen was going to get a better result after trial. "A defendant without any viable defense will be highly likely to lose at trial. And a defendant facing such long odds will rarely be able to show prejudice from accepting a guilty plea that offers him [or her] a better resolution than would be likely after trial." (*Lee*, *supra*, 137 S.Ct. at p. 1966.) Here, conviction under Health and Safety Code section 11358 would have led to a maximum three-year prison sentence. Chen's plea resulted in imposition of sentence suspended and her placement on probation for three years with a 120-day jail term and various fines and fees. Her plea agreement offered a better resolution than she was likely to receive after trial.

Finally, there is no evidence to corroborate Chen's assertion that the immigration consequences of her plea were of primary importance to her. In *Lee*, the defendant repeatedly asked his attorney if he could be deported, and counsel testified that Lee would have proceeded to trial had he known he would face deportation. (*Lee*, *supra*, 137 S.Ct. at pp. 1967-1968.) Lee also told the court at the plea hearing that the risk of deportation affected his plea, and he only entered his plea after his counsel assured him there was no real risk. (*Id.* at p. 1968.) Here, there is no comparable evidence. Chen said no such thing during her plea hearing, and her attorney testified that he advised her the plea could cause her to be removed from the country. But there is nothing in the record that indicates Chen asked about her possible deportation, and this suggests

9

immigration consequences were not her primary consideration. The record also shows Chen was willing to enter a guilty plea with immigration consequences because she signed a form acknowledging her guilty plea could result in her deportation. We are not convinced that Chen would have declined the plea had counsel told her more specifically or emphatically that deportation was certain.

Chen states she "has clearly been prejudiced by her lawyer's misadvice and his failure to disclose the harsh, irreversible immigration consequences." She contends that had she been advised that she would be facing deportation to a country she hardly knew, she would not have pleaded guilty. In these circumstances, she asserts a plea "would have been illogical" since it would have resulted in "mandatory deportation to a third world country to which she has no connection or family ties." We have no doubt the immigration consequences Chen currently faces are critically important to her. However, uncorroborated self-serving statements are insufficient to meet her burden of proof. The evidence surrounding her plea shows the likelihood of a conviction and exposure to a longer prison sentence after which she could have still faced removal proceedings. We are not convinced that immigration concerns would have motivated her to reject a plea.

Chen claims her plea bargain did not present a tremendous advantage over her exposure at trial. According to her, the maximum exposure for the charges she faced was "[three] years if given the upper term, but more likely the midterm of [two] years. . . . Her bargain provided for 120 days in jail . . . . However, she spent an additional 15 months in immigration detention." Thus, she says she spent more time in custody as a result of her plea than she would have serving a mid-term sentence following conviction. However, the immigration detention occurred months after she entered her plea, was a consequence of federal action, and was not a part of her bargain. At the time of her plea, there is no indication in the record of any immigration hold on Chen that would make immigration detention a certainty as a result of her plea.

Chen says in considering the plea she "made clear to her lawyer that she was primarily concerned about being away from her family and having to spend time in jail." Chen says this is the way she "placed particular emphasis on the immigration

10

consequences of the plea . . . .” We are not persuaded. On its face, the statement simply shows that Chen did not want to be away from her parents while she was serving time in jail or prison. It does not suggest her concern was about deportation. Moreover, this statement is taken from Chen's 2017 declaration in support of her Penal Code section 1473.7 motion. It is not evidence of events occurring at the time of her 2012 plea agreement. Chen's assertions that she would not have accepted the plea had she been properly advised, without more, are legally insufficient to demonstrate prejudice.

## DISPOSITION

The order denying Chen's motion under Penal Code section 1473.7 is affirmed.

_____
Siggins, P.J.

WE CONCUR:


_____
Petrou, J.


_____
Wiseman, J.[*]

---

[*] Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

*People v. Chen*, A152754

Trial Court:                                          Napa County Superior Court


Trial Judge:                                          Honorable Mark Boessenecker

Counsel:

Stanley D. Radtke, under appointment by the Court of Appeal, for Defendant and
Appellant.

Xavier Bacerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General,
Jeffrey M. Laurence, Senior Assistant Attorney General, Seth Schalit, Supervising
Deputy Attorney General, Melissa J. Kendra, Deputy Attorney General, for Plaintiff and
Respondent.