Filed 8/6/21  P. v. Parra CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>v.<br><br>JOEL QUINTANA PARRA,<br><br>  Defendant and Appellant. | 2d Crim. No. B309749<br>(Super. Ct. No. NA003695)<br>(Los Angeles County) |

Joel Quintana Parra[1] appeals from the postjudgment order denying his motion to vacate his conviction.  (Pen. Code, § 1473.7.)  He contends the conviction was invalid due to prejudicial error impairing his ability to understand the immigration consequences of his guilty plea.  We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

---

[1] The record contains several variations of appellant's name, including Joel Parra Quintana, Joel Para Quintana, Joel Parra, and Joel Quintana-Parra.

### *Guilty plea and sentence*

In 1990, Quintana was charged with felony counts of receiving stolen property (count 1, Pen. Code, § 496, former subd. 1) and forgery of a vehicle certificate of title (count 2, Pen. Code, § 470).  Quintana pled guilty to forgery in exchange for felony probation and one year in county jail.  The court advised him:  "If by some chance you are not a citizen of this country, this conviction could result in your being deported, your being denied naturalization, your being denied the right to come back into the country at a later time."  Quintana said he understood.  The minute order states, "Defendant advised of possible effects of plea on any alien/citizenship/probation/parole status."

The court placed Quintana on probation with terms including 365 days in the county jail, with credit for 101 actual days served and 50 days conduct credit.  On motion of the People, the court dismissed count 1.

In 1995, the court found Quintana in violation of probation and sentenced him to 16 months in state prison, with credit for 335 actual days served and 165 days conduct credit.  He received a concurrent prison sentence of 16 months for a 1995 felony conviction of petty theft with a prior (Pen. Code, § 666).  In 2016, the section 666 conviction was reduced to a misdemeanor. (Pen. Code, § 1170.18, subd. (g).)

### *Immigration proceedings*

In 2012, Quintana was detained by Immigration and Customs Enforcement (ICE).  ICE sought his removal from the country based on a 2010 conviction of possession of a firearm by a felon.  The basis for removal was then amended to substitute conviction of forgery with a loss to the victim of $10,000 or more.  ICE again substituted its basis for seeking removal to a 2002

conviction for causing corporal injury to a spouse. Quintana states that this is the offense for which he is facing removal.

Quintana sought discretionary relief of cancellation of removal. (8 U.S.C. § 1229b(a), Immigration and Nationality Act (INA) § 240A(a).) The immigration judge determined that Quintana was not eligible for relief because his conviction for "an offense relating to . . . forgery. . . for which the term of imprisonment is at least one year" was an "aggravated felony."

### *Motion to vacate*

In 2020, Quintana filed a motion to vacate the forgery conviction pursuant to Penal Code section 1473.7. He stated that the 1988 theft conviction and the forgery conviction were crimes of moral turpitude that subjected him to deportation. Because the forgery sentence was a year or more, it was an aggravated felony that subjected Quintana to mandatory deportation and permanent exclusion from the country. It also made him ineligible to apply for discretionary cancellation of removal to remain in the country. The former public defender who represented Quintana during the guilty plea did not remember the case.

### *Quintana's declaration*

The motion to vacate was supported by a declaration from Quintana, who stated as follows:

Quintana has been in the United States as a lawful permanent resident since he was brought from Mexico at the age of nine. His daughters, grandchildren, mother, and siblings are United States citizens. He has been employed as a longshoreman for 36 years. He is 62 years old, has health issues, does not speak Spanish, has no knowledge of Mexico, and has no family there.

When he was arrested for forgery, he was told he

3

forged the title to a pick-up truck so a friend could sell it. He did not remember if he signed the registration. Although the signature was "somewhat different" from Quintana's handwriting, comparison by a handwriting analyst supported Quintana's guilt. His attorney told him no one would believe him if he went to trial and he would face "the possibility of a higher conviction rate and sentence."

Quintana's attorney "explained . . . that [he] would not be deported or be denied [his] citizenship through naturalization process." He was "briefly told by [his] counsel of immigration consequences, but that it didn't apply to [him] because [he] was a lawful permanent resident" from the time he was a minor, and had never been detained by immigration for prior arrests or convictions. His attorney did not otherwise discuss immigration consequences or other possible pleas or sentences and did not advise him to seek advice from an immigration attorney.

Had he known of the immigration consequences, he would not have pled guilty to forgery but would have sought an "immigration-safe plea" or "taken [his] chances with trial." He decided to plead guilty when his attorney told him he would be sentenced to 365 days in county jail, and with credit for time served would either be released or serve at most an additional month in custody.

### Hearing and ruling

At the hearing on the motion to vacate his plea, Quintana testified he had been arrested several times as a juvenile and adult, but had no contact with ICE until 2012. When he pled guilty, his attorney told him "[o]f the deportation or something. Something like that." His attorney told him the

4

immigration consequences "would be deportation and all that. But it didn't apply to me because I was legal.  I was not illegal." When asked if he drew that conclusion or his attorney told him that, Quintana responded, "I guess we both came to the conclusion."

His attorney never told him forgery was a moral turpitude crime that would result in deportation.  When asked if receiving that advice would have affected his decision to plead guilty, Quintana said he would still think not because he was "legal."

Quintana pled guilty because "they would have found me guilty anyways" and "they already had the evidence of stuff against me."  He "took the deal" because with his custody credits, he was "basically going to get out of custody."

The trial court denied the motion to vacate.  The court found that Quintana's attorney told him he "could be deported.  That this was a deportable offense."  The court found that counsel and the trial judge "did what [they were] supposed to do" by advising that deportation was possible.  But Quintana "just didn't think it applied" to him.  The court did not "think [Quintana] would have done anything differently."  He made a "rational decision" to plead guilty to one of the two counts for time served.

## DISCUSSION
### *Penal Code section 1473.7*

The trial court must vacate a conviction if the defendant establishes by a preponderance of the evidence that: (1) the conviction "is currently causing or has the potential to cause removal or the denial of an application for an immigration benefit," (2) the conviction is "legally invalid due to . . . error

5

damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a plea of guilty or nolo contendere," and (3) the error was "prejudicial." (Pen. Code, § 1473.7, subds. (a)(1), (e)(1).) The 2018 amendment to the statute provides: "A finding of legal invalidity may, but need not, include a finding of ineffective assistance of counsel." (Pen. Code, § 1473.7, subd. (a)(1).)

In an appeal of the denial of a motion to vacate pursuant to Penal Code section 1473.7, whether counsel's advice regarding immigration was inadequate and whether defendant was prejudiced thereby are mixed questions of law and fact we review independently. (*People v. Vivar* (2021) 11 Cal.5th 510, 524 (*Vivar*).) "'[U]nder independent review, an appellate court exercises its independent judgment to determine whether the facts satisfy the rule of law.'" (*Id*. at p. 527.) We "accord[] substantial weight to the trial court's credibility findings." (*Id*. at p. 524.) We "may "'reach a different conclusion [from the trial court] on an independent examination of the evidence . . . even where the evidence is conflicting,"'" but we "give particular deference to factual findings based on the trial court's personal observations of witnesses." (*Id*. at pp. 527-528.)

### *Immigration consequences*

Quintana has established that the forgery conviction "is currently causing or has the potential to cause removal or the denial of an application for an immigration benefit." (Pen. Code, § 1473.7, subd. (e)(1).)

Since 1952, an alien shall be removed if he or she "is convicted of two or more crimes involving moral turpitude, not arising out of a single scheme of criminal misconduct." (8 U.S.C.

§ 1227(a)(2)(A)(ii), INA § 237(a)(2)(A)(ii) [former § 241(a)(4)].) Forgery and theft are crimes of moral turpitude. (*Morasch v. Immigration and Naturalization Service* (9th Cir. 1966) 363 F.2d 30, 31.) Because Quintana had a 1988 conviction for petty theft, his guilty plea to forgery in September 1990 constituted a second moral turpitude conviction.[2] During the immigration proceedings, ICE changed course several times as to which of Quintana's convictions formed the basis for his removal. At the time of his section 1473.7 motion, ICE was seeking to remove him based on a 2002 domestic violence conviction (8 U.S.C. §§ 1227(a)(2)(E)(i), 1229a, INA §§ 237(a)(2)(E)(i), 240), not two moral turpitude convictions. But the forgery conviction, as one of several moral turpitude crimes, could still result in his removal.

The forgery conviction has another immigration consequence: it bars relief through cancellation of removal. The Attorney General has the discretion to cancel removal of a deportable alien who has been a lawful permanent resident for at least five years, has resided in the United States continuously for seven years, and has not been convicted of an aggravated felony. (8 U.S.C. § 1229b(a), INA § 240A(a); *Cruz-Camey v. Gonzales* (1st Cir. 2007) 504 F.3d 28, 29.) But an alien convicted of an aggravated felony is ineligible for this discretionary relief. (*Moncrieffe v. Holder* (2013) 569 U.S. 184, 187.) Forgery resulting in a sentence of a year or more in custody is an aggravated felony. (8 U.S.C. § 1101(a)(43)(R), INA § 101(a)(43)(R), as amended by Illegal Immigration Reform and

---

[2] Quintana also has other moral turpitude convictions: misdemeanor forgery in April 1990, and petty theft in 1977 and 1995.

7

Immigrant Responsibility Act of 1996 (IIRAIRA) § 321(a)(10).)

### *Ineffective assistance of counsel*

Penal Code section 1473.7, subdivision (a)(1), was amended in 2018 to provide that "even if the motion is based upon errors by counsel, the moving party need not also establish a Sixth Amendment violation as by demonstrating that 'counsel's representation "fell below an objective standard of reasonableness" . . . "under prevailing professional norms."'" (*People v. Camacho* (2019) 32 Cal.App.5th 998, 1008 (*Camacho*).) The defendant is "required only to show that one or more of the established errors were prejudicial and damaged his 'ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of [his] plea.'" (*Id.* at p. 1009.)  Quintana has not shown that his counsel erred.

At the time of his guilty plea, forgery with a sentence of 365 days or 16 months was not an aggravated felony.[3]

---

[3] Forgery with a possible term of imprisonment of five years or more became an aggravated felony on April 24, 1996. (8 U.S.C. § 1101(a)(43)(R), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) § 440(e)(8).) Effective September 30, 1996, the definition of aggravated felony was amended to include forgery for which a sentence of one year or more was imposed.  (8 U.S.C. § 1101(a)(43)(R), as amended by IIRAIRA § 321(a)(10).)  Quintana concedes the "365 [day] rule" was not in effect at the time of the 1990 guilty plea.  Nor was it in effect when the court revoked Quintana's probation and sentenced him to 16 months in prison.  The amendment is retroactive—it applies "regardless of whether the conviction was entered before, on, or after [September 30, 1996]."  (8 U.S.C. § 1101(a)(43), final par., as amended by IIRAIRA § 321(b) & (c);

Counsel is not charged with foreknowledge of future legal changes. (*People v. Dennis* (1998) 17 Cal.4th 468, 537.) Thus, counsel could not have advised Quintana that his plea would someday bar discretionary cancellation of removal.

The evidence supports the trial court's conclusion that Quintana's counsel "did what he . . . was supposed to do." Although Quintana's declaration stated that counsel told him he "would not be deported," his testimony was to the contrary—counsel told him the immigration consequences "would be deportation." Counsel's performance was therefore not deficient because Quintana was adequately advised that his guilty plea would result in deportation. (*People v. Olvera* (2018) 24 Cal.App.5th 1112, 1116-1117, abrogated in part by statute as noted in *Camacho*, *supra*, 32 Cal.App.5th at pp. 1005-1006.)

This case is unlike *Camacho*. There, the judge advised the defendant the conviction could lead to deportation, but his attorney "told him everything would be fine." (*Camacho*, *supra*, 32 Cal.App.5th at p. 1001.) The attorney stated he would seek to reduce the charge to a misdemeanor and expunge the conviction, and incorrectly advised that this "would help with defendant's immigration consequences." (*Id*. at pp. 1003, 1009.) The Court of Appeal ordered the defendant's plea vacated "due to his and his counsel's errors." (*Id*. at p. 1009.) Similarly, in *Lee v. United States* (2017) 582 U.S. ___, ___ [137 S.Ct. 1958, 1962, 198 L.Ed.2d 476] (*Lee*), "Lee's attorney was wrong" when he told him he would not be deported if he pled guilty; in fact, deportation was mandatory. In contrast here, counsel did not give erroneous

---

*Aragon-Ayon v. Immigration and Naturalization Service* (9th Cir. 2000) 206 F.3d 847 [amendment is retroactive]; see *Vartelas v. Holder* (2012) 566 U.S. 257, 267 [recognizing retroactive effect].)

advice.

### *Failure to understand immigration consequences*

In *Camacho,* the court ordered the defendant's plea vacated based on his misunderstanding of immigration consequences due to counsel's error and "defendant's own error." (*Camacho, supra,* 32 Cal.App.5th at p. 1009.) Two panels of the Fourth District have taken this holding a step further and concluded that the "error damaging the moving party's ability to meaningfully understand . . . potential adverse immigration consequences" need not be an error of counsel or the court, but may be defendant's *own error.* (*People v. Mejia* (2019) 36 Cal.App.5th 859, 871-872; *People v. Jung* (2020) 59 Cal.App.5th 842, 846, disapproved on another point in *Vivar, supra,* 11 Cal.5th at p. 526, fn. 4.) Although Quintana was mistaken about whether the immigration consequences applied to him, we need not determine whether this is sufficient to establish "error" pursuant to Penal Code section 1473.7 because he has not shown prejudice.

### *Prejudice*

"[S]howing prejudicial error under [Penal Code] section 1473.7, subdivision (a)(1) means demonstrating a reasonable probability that the defendant would have rejected the plea if the defendant had correctly understood its actual or potential immigration consequences." (*Vivar, supra,* 11 Cal.5th at p. 529.) "The focus [is] on 'what the defendant would have done, not whether the defendant's decision would have led to a more favorable result.'" (*Id.* at pp. 528-529.) In making this assessment, we consider the totality of the circumstances. (*Id.* at p. 529.)

When the immigration consequences are "dire, even

10

the smallest chance of success at trial may look attractive" and the defendant may "reject[] any plea leading to deportation in favor of throwing a 'Hail Mary' at trial." (*Lee*, *supra*, 582 U.S. at p. ___ [137 S.Ct. at p. 1961].) But "a defendant facing such long odds will rarely be able to show prejudice from accepting a guilty plea that offers him a better resolution than would be likely after trial. . . . Where a defendant has no plausible chance of an acquittal at trial, it is highly likely that he will accept a plea if the Government offers one." (*Id.* at p. 1966.) That is what Quintana did here.

"Courts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies. Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences." (*Lee*, *supra*, 582 U.S. at p. ___ [137 S.Ct. at p. 1967].) "'[A] defendant's self-serving statement—after trial, conviction, and sentence—that with competent advice he or she *would* have accepted [or rejected] a proffered plea bargain, is insufficient in and of itself to sustain the defendant's burden of proof as to prejudice, and must be corroborated independently by objective evidence.'" (*People v. Bravo* (2020) 58 Cal.App.5th 1161, 1171, disapproved on another point in *Vivar*, *supra*, 11 Cal.5th at p. 526, fn. 4.)

In *Lee*, it was undisputed from the defendant's statements when he pled guilty that "'deportation was the determinative issue in Lee's decision whether to accept the plea deal.'" (*Lee*, *supra*, 582 U.S. at p. ___ [137 S.Ct. at pp. 1967-1968].) The Supreme Court concluded that "[i]n the unusual circumstances of this case," Lee "adequately demonstrated a reasonable probability that he would have rejected the plea had

11

he known that it would lead to mandatory deportation." (*Id*. at p. 1967.) Similarly in *Vivar*, "[t]rial counsel's recollection and contemporaneous notes reflect that Vivar was indeed concerned about the [immigration] 'consequences' of his plea." (*Vivar*, *supra*, 11 Cal.5th at p. 530.) Vivar wrote letters to the court "at or near the time of his plea" expressing concern about the effect of his plea on his immigration status. (*Id*. at pp. 530-531.)

In contrast here, the trial court's conclusion that Quintana pled guilty in order to ensure his imminent release from custody and dismissal of the other count finds support in the evidence. Quintana "points to no contemporaneous evidence in the record to independently corroborate the attestation in his declaration." (*People v. Bravo, supra*, 58 Cal.App.5th at p. 1172.) The trial court properly denied the motion to vacate the guilty plea because Quintana did not corroborate his claim that he would have gone to trial if he understood the immigration consequences.

## DISPOSITION

The order (denying the motion to vacate the conviction) is affirmed.

NOT TO BE PUBLISHED.

TANGEMAN, J.

We concur:

GILBERT, P. J.        YEGAN, J.

12

Laura L. Laesecke, Judge

Superior Court County of Los Angeles

_____

Andres Bustamante for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Paul M. Roadarmel, Jr. and Steven D. Matthews, Deputy Attorneys General, for Plaintiff and Respondent.