Filed 1/6/22

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, Plaintiff and Respondent, v. MOHAMMED ABDELSALAM, Defendant and Appellant. | B307375 (Los Angeles County Super. Ct. No. KA115170) |

APPEAL from and an order of the Superior Court of Los Angeles County.  Rogelio G. Delgado, Judge.  Affirmed.

Katharine Eileen Greenebaum, under appointment by the Court of Appeal for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Paul M. Roadarmel, Jr. and Steven D. Matthews, Supervising Deputy Attorneys General, for Plaintiff and Respondent.

_____

Appellant Mohammed Abdelsalam pled guilty to making criminal threats and stipulated to a local custody commitment. The trial court orally told appellant that, as a result of the conviction, he would be deported. He was also advised in writing that he would be deported. His attorney reviewed the immigration consequences of the plea with appellant. Appellant orally acknowledged that he understood the immigration consequences of his plea, and stated that he would "wait for immigration." Now that deportation proceedings have, as predicted, been initiated, appellant claims he never understood that he would be deported and should therefore be allowed to withdraw his plea. The trial court denied the motion to withdraw the plea, finding it unsupported by the record. We affirm.

## FACTUAL BACKGROUND

In 2017, appellant came to the United States on a fiancé visa. His fiancée, Mona, did not know that appellant planned to divorce her once he gained citizenship through the marriage. Mona discovered a record of appellant's plan on his phone, as well as evidence of appellant's relationships with other women. A message on appellant's phone said in part, "[l]et me just get ahold of the marriage certificate, as soon as I become legal, I can divorce her and she can go F herself." Mona broke off their relationship and pending marriage, reported appellant's conduct to the Immigration and Customs Enforcement (ICE) fraud tip line, and notified the police. When Mona confronted appellant with what she learned, appellant was upset and fought physically with her over his phone, which she kept because it contained evidence of appellant's intended fraud. Appellant injured Mona, and she filed for and received a temporary restraining order that was served on appellant. Appellant violated the restraining

1

order, burglarized Mona's house, threatened her, and assaulted Mona at her office after hiding in the trunk of her car with a knife.

Appellant was charged in a five-count information with injuring a cohabitant, receiving stolen property, two counts of disobeying a domestic relations court order, and making criminal threats.  If convicted on all charges, appellant faced up to 10 years in state prison.  At the preliminary hearing, appellant heard Mona testify that when she reported appellant's attempted fraud to ICE, she asked ICE to deport him.  Appellant also heard her testify that she met with two ICE agents and they told her, "Mona, we're interested in this man.  We want him . . .  [I]f you ever meet him anywhere, we will be within half an hour there to catch him."  After the preliminary hearing, appellant entered into a plea agreement.  He pled no contest to criminal threats and was sentenced to five years of probation with 364 days in local custody.

Appellant thereafter was detained by ICE, which initiated deportation proceedings.  Appellant then filed a motion to vacate his plea.  The initial motion was denied without appellant's presence or counsel, and without a hearing.  This court reversed and remanded for a hearing.  Counsel was appointed and filed a new motion to withdraw the plea.  After argument, the motion was denied.  On appeal, appellant argues he did not meaningfully understand the adverse immigration consequences of his plea.

**A.  Advisals During Taking of Plea**

Appellant was assisted by an Arabic interpreter and by his counsel when he entered a change of plea.  As part of the written plea agreement, appellant initialed next to the advisement: "Immigration Consequences—I understand that if I am not a

citizen of the United States, *I must expect my plea of guilty or no contest will result in my deportation*, exclusion from admission or reentry to the United States, and denial of naturalization and amnesty." (Italics added.) Appellant also initialed next to the statements: "Prior to entering into this plea, I have had a full opportunity to discuss with my attorney the facts of my case, the elements of the charged offense(s) and the enhancement(s), and defenses that I may have, my constitutional rights and waiver of those rights, and the consequences of my plea," and "I have no further questions of the Court or of counsel with regard to my plea(s) and admission(s) in this case." Appellant signed the written plea agreement stating he had read and initialed each paragraph and discussed them with his attorney. His initials meant that he had read, understood and agreed with what was stated; that the nature of the charges and possible defenses to them and the effect of any special allegations and enhancements had been explained to him; and that he understood and waived his rights in order to enter into the plea.

Appellant's trial counsel signed the written agreement stating that she reviewed the form with her client; that she explained appellant's rights to appellant and answered all of his questions with regards to his rights and the plea; that she discussed the facts of the case with appellant and explained the nature and elements of each charge, any possible defenses, and the effects and consequences of the plea; and that she knew of no reason that appellant should not enter into the plea. The trial court also signed the written plea agreement, finding appellant knowingly and intelligently waived and gave up his rights, with an understanding of the nature and consequence of the plea.

At the plea hearing, appellant's trial counsel was specifically asked by the trial court "have you had sufficient time to discuss immigration consequences with your client?" She replied "yes." The trial court further asked, "do you believe your client understands the immigration consequences?" Trial counsel responded: "I explained them to him." During the plea colloquy in court, appellant orally stated he had a chance to discuss the charges and any defense with his counsel; that he went over the plea form with counsel with the help of an interpreter; and that by initialing next to the statements on the plea agreement he was indicating he understood what was said. Appellant was also orally advised: "If you are not a citizen of the United States *your plea will result in your deportation*, denial of naturalization and amnesty, and exclusion from the United States." (Italics added.) Appellant responded, "[y]es, I understand. But I'm just going to wait for immigration." Appellant further stated no one made any promises or threats to him to get him to enter into the plea, and that he entered into the plea freely and voluntarily. The trial court accepted the plea, finding appellant was entering into the plea freely and voluntarily, with an understanding of the nature and consequences of the plea.

## B. Appellant's Motion to Withdraw His Plea

After deportation proceedings were initiated, appellant filed a motion to withdraw his plea pursuant to Penal Code section 1473.7.[1] Appellant argued in his motion that he "was never read any reports, his case was never investigated and he was brought back and forth to court just to be told he was being given a deal and would be released." Appellant argued trial

---

[1] All further section references are to the Penal Code unless otherwise specified.

counsel did not explain the immigration consequences to him prior to taking the plea, and that had he been advised, he never would have accepted the plea and would have instead gone to trial.

Appellant also appended his declaration in which he declared he came into the United States to marry the victim and because he was afraid of being a Jehovah's Witness in Egypt, a country of Muslims; that once in the United States he gave the victim $94,000 as a down payment on her house and $11,000 in jewelry; that the victim made up stories and arrested him for a crime he knew nothing about; that the victim made up the charges to get him deported and to take the house and jewelry; that counsel never told appellant about the mandatory adverse immigration consequences if he took the deal; that counsel told him to take the deal and he would be released; and that he was instead picked up by immigration officials.

## DISCUSSION

### I.     Section 1473.7 and the Standard of Review

Section 1473.7 authorizes a person who is no longer in criminal custody to move to vacate a conviction or sentence where the "conviction or sentence is legally invalid due to prejudicial error damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a plea of guilty or nolo contendere."  (§ 1473.7, subd. (a)(1).)  "Under this new provision, a court 'shall' vacate a conviction or sentence upon a showing, by a preponderance of the evidence, of 'prejudicial error damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a plea of guilty or nolo

5

contendere.' (§ 1473.7, subds. (e)(1), (a)(1).)" (*People v. Vivar* (2021) 11 Cal.5th 510, 523 (*Vivar*).)

In 2019, the Legislature amended section 1473.7 to clarify that a "finding of legal invalidity may, but need not, include a finding of ineffective assistance of counsel." (§ 1473.7, subd. (a)(1).) Thus, a person seeking relief pursuant to section 1473.7 need only demonstrate prejudice that he would not have entered the plea had he known about the immigration consequences. (*People v. Camacho* (2019) 32 Cal.App.5th 998, 1010–1011 (*Camacho*).)

"[S]howing prejudicial error under section 1473.7, subdivision (a)(1) means demonstrating a reasonable probability that the defendant would have rejected the plea if the defendant had correctly understood its actual or potential immigration consequences. When courts assess whether a petitioner has shown that reasonable probability, they consider the totality of the circumstances. Factors particularly relevant to this inquiry include the defendant's ties to the United States, the importance the defendant placed on avoiding deportation, the defendant's priorities in seeking a plea bargain, and whether the defendant had reason to believe an immigration-neutral negotiated disposition was possible." (*Vivar, supra*, 11 Cal.5th at pp. 529–530.)

Our Supreme Court recently determined the standard of review for section 1473.7 motion proceedings. In *Vivar*, the court endorsed the independent standard of review. (*Vivar, supra*, 11 Cal.5th at pp. 524–528.) Under independent review, an appellate court exercises its independent judgment to determine whether the facts satisfy the rule of law. (*Id*. at p. 527.) When courts engage in independent review, they should be mindful that

independent review is not the equivalent of de novo review. An appellate court may not simply second-guess factual findings that are based on the trial court's own observations. (*Ibid*.) Factual determinations that are based on the credibility of witnesses the trial court heard and observed are entitled to particular deference, even though courts reviewing such claims generally may reach a different conclusion from the trial court on an independent examination of the evidence even where the evidence is conflicting. (*Ibid*.) In section 1473.7 motion proceedings, appellate courts should similarly give particular deference to factual findings based on the trial court's personal observations of witnesses. (*Vivar, supra,* at pp. 527–528.) Where the facts derive entirely from written declarations and other documents, however, there is no reason to conclude the trial court has the same special insight on the question at issue; as a practical matter, the trial court and appellate court are in the same position in interpreting written declarations when reviewing a cold record in a section 1473.7 proceeding. (*Vivar, supra,* at p. 528.) Ultimately it is for the appellate court to decide, based on its independent judgment, whether the facts establish prejudice under section 1473.7. (*Vivar, supra,* at p. 528.)

## II. The Trial Court Is Presumed to Have Applied the Proper Standard of Proof

Appellant argues the trial court erred because "the court never stated what it believed appellant's burden was and what standard it had used to make its determination." Appellant further argues the court did not use the preponderance of the evidence standard when determining whether appellant would have accepted the plea and whether appellant meaningfully

7

understood the adverse immigration consequences of his plea.

Section 1473.7, subdivision (e)(1), explicitly sets forth the preponderance of the evidence burden of proof.  Both appellant and the People argued the appropriate standard was preponderance of the evidence.  The trial court specifically held appellant failed to meet his burden.  Nothing in the record suggests the court mistakenly applied any other standard of proof.

Neither section 1473.7, nor any other authority, requires a court to articulate on the record that it is using the preponderance of the evidence standard when denying the motion.  In the absence of evidence to the contrary, it is presumed the court was aware of and applied the proper burden of proof. (See Evid. Code, § 664.)  "[S]cores of appellate decisions, relying on this provision, have held that 'in the absence of any contrary evidence, we are entitled to presume that the trial court . . . properly followed established law.' " (*Ross v. Superior Court of Sacramento County* (1977) 19 Cal.3d 899, 913 (*Ross*); accord, *People v. Ramirez* (2021) 10 Cal.5th 983, 1042 ["Absent evidence to the contrary, we presume that the trial court knew the law and followed it"]; *People v. Gutierrez* (2014) 58 Cal.4th 1354, 1390; *People v. Thomas* (2011) 52 Cal.4th 336, 361.)  "[T]he rule encompasses a presumption that the trial court applied the proper burden of proof in matters tried to the court." (*Ross*, *supra*, 19 Cal.3d at pp. 913–914.)  An appellant contending a trial court failed to follow established law bears the burden of rebutting the presumption to the contrary.  (See *People v. Valdez* (2012) 55 Cal.4th 82, 176.)

Appellant cites to no case or statute that required the court to state that the burden of proof argued by both parties was, in fact, the standard utilized by the court. Appellant has failed to rebut the presumption that the court was aware of and properly followed the law.

## III. Appellant Was Fully Advised of the Immigration Consequences of His Plea

Appellant argues trial counsel failed to advise him of the adverse immigration consequences of his plea, and that he did not meaningfully understand these consequences. The record does not support this contention.

During the taking of the plea, appellant was told orally and in writing that he *will* be deported. Not that he "might" be deported, or that he "could" be deported. Appellant's argument that he was not aware of the mandatory nature of the deportation flies in the face of the mandatory language used to describe the likelihood of deportation. Appellant is not entitled to simply ignore the admonitions he was given about the consequences of the plea, and argue that he unilaterally assumed he would be treated in direct contravention of what he was advised orally and in writing.

When asked if he understood that his plea "will result in your deportation," appellant replied, "[y]es, I understand. I'm just going to wait for immigration." Appellant argues this response supports his contention that he did *not* understand. But he directly said he understood. And the comment that he would "wait for immigration" makes perfect sense. He was being sentenced to 364 days of custody, with custody credits of 220 days. He would need to finish serving the balance of his custody while waiting for "immigration" (ICE) to pick him up from jail to

be deported.[2] Nothing about appellant's oral and written responses during the plea process indicated he was confused about the multiple advisals that he would be deported.

A defendant seeking to set aside a plea must do more than simply claim he did not understand the immigration consequences of the plea. The claim must be corroborated by evidence beyond the defendant's self-serving statements. For example, in *Camacho*, the court found "defendant's claims of error were supported by his former attorney's undisputed testimony . . . that he misunderstood the potential immigration consequences . . . and he did not explore possible alternatives to pleading to an aggravated felony." (*Camacho*, *supra*, 32 Cal.App.5th at p. 1009.) In *Vivar*, the Supreme Court noted that defendant presented counsel's e-mail correspondence and handwritten notes to establish that she did not "advise him as to the actual immigration consequences of a plea to the drug charge or any other plea." (*Vivar*, *supra*, 11 Cal.5th at p. 519.) Our Supreme Court has stated that a defendant's claim that "he would not have pled guilty if given competent advice 'must be corroborated independently by objective evidence.'" (*In re Resendiz* (2001) 25 Cal.4th 230, 253 (disapproved on other grounds, *Padilla v. Kentucky* (2010) 559 U.S. 356, 370), quoting *In re Alvernaz* (1992) 2 Cal.4th 924, 938; see also, *People v. Duarte* (2000) 24 Cal.4th 603, 611; *People v. Mejia* (2019)

---

[2] Appellant had also heard Mona testify that she reported his attempted immigration fraud to ICE, asked that ICE deport him, and that ICE agents told her they wanted to "catch him." An agent of Homeland Security was present at appellant's preliminary hearing. Appellant had no reason to believe ICE would allow him to stay in the United States.

36 Cal.App.5th 859, 872; *In re Hernandez* (2019) 33 Cal.App.5th 530, 547.) "It is up to the trial court to determine whether the defendant's assertion is credible, and the court may reject an assertion that is not supported by an explanation or other corroborating circumstances." (*People v. Martinez* (2013) 57 Cal.4th 555, 565 (*Martinez*).)

Here, appellant offered no contemporaneous evidence such as an affidavit and/or testimony by trial counsel, or counsel's files, notes, or email correspondence. This is a case unlike *Vivar*, where the written advisal informed defendant he "may" be subject to deportation, and counsel stated "possible" deportation was discussed with defendant. (*Vivar, supra*, 11 Cal.5th at p. 519.) Appellant has presented no independent evidence that he was told anything other than that he would be deported.

Section 1473.7, subdivision (a)(1), requires a defendant to show that his "*ability* to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a plea" was damaged by an error. (Italics added.) Appellant has failed to do so. But even if he had met this burden, he was required to further show that the damage was caused by "prejudicial error." (*Ibid.*; *Vivar, supra*, 11 Cal.5th at p. 528.) As recently explained in *Vivar*, "prejudicial error" under section 1473.7, subdivision (a)(1), "means demonstrating a reasonable probability that the defendant would have rejected the plea if the defendant had correctly understood its actual or potential immigration consequences. When courts assess whether a petitioner has shown that reasonable probability, they consider the totality of the circumstances. [Citation.] Factors particularly relevant to this inquiry include the defendant's ties to the United States, the importance the

11

defendant placed on avoiding deportation, the defendant's priorities in seeking a plea bargain, and whether the defendant had reason to believe an immigration-neutral negotiated disposition was possible." (*Vivar, supra,* at pp. 529–530.)

The defendant in *Vivar* had lived in the United States for 40 years. (*Vivar, supra,* 11 Cal.5th at p. 530.) Appellant, by contrast, had just arrived here. And he was admitted on a fraudulently procured fiancé visa, with an intent to gain citizenship by deception. In the short time he was here, appellant engaged in conduct that got him arrested for stalking, assaulting, burglarizing and threatening the person who had made his presence here possible. She wanted him deported. Deportation agents literally sat in on his preliminary hearing. He faced 10 years in prison, and now claims he would have somehow avoided deportation and rejected the plea agreement that resulted in only a few months of additional custody.[3]

Appellant has also failed to present evidence that at the time of the plea, he "had reason to believe an immigration-neutral negotiated disposition was possible." (*Vivar, supra,* 11 Cal.5th at p. 530.) He did not offer an expert declaration opining

---

[3]    Appellant now claims that avoiding deportation was his primary goal because he had changed religions and faced religious persecution in Egypt. It is apparent that appellant did not want to live in Egypt, since he was willing to commit fraud to immigrate to the United States. But that does not mean that he was willing to jettison a plea offer and risk spending years in prison on the off-chance he might avoid deportation (despite being told he would be deported). He fails to explain why he would not have believed he had the option after deportation to relocate to another country with less religious persecution, since he had no preexisting ties to the United States.

that alternative, nondeportable dispositions would have been available and acceptable to the prosecutor.  (*People v. Olvera* (2018) 24 Cal.App.5th 1112, 1118.)  His counsel *now* engages in speculation that he could have pled to burglary, without any citation from the record indicating that disposition would have been entertained by the prosecutor.  And the issue is whether *appellant* had reason to believe a nondeportable disposition was available.  He did not present a declaration from trial counsel that he was given such advice (which would have been contrary to the direct plea advisals that deportation would occur).  (Cf. *Camacho*, *supra*, 32 Cal.App.5th at p. 1009 ["[D]efendant's claims of error were supported by his former attorney's undisputed testimony"]; *Vivar*, *supra*, 11 Cal.5th at p. 531.)

The trial court also indicated the testimony at the preliminary hearing demonstrated the People could have filed additional and even more serious charges.  Thus, if appellant had rejected the plea and insisted on a trial, although he "would for a period have retained a theoretical possibility of evading the conviction that rendered him deportable and excludable, it is equally true that a conviction following trial would have subjected him to the same immigration consequences." (*In re Resendiz*, *supra*, 25 Cal.4th at p. 254; see also *Martinez, supra* 57 Cal.4th at p. 564 [whether a more favorable result was not reasonably probable is a factor for the trial court to consider when assessing the credibility of a defendant's claim that he would have rejected the plea bargain if properly advised].)

Appellant has not explained why anyone would reasonably have expected that ICE would forgo deportation proceedings against someone who admitted in writing they were temporarily getting married solely to obtain citizenship.  Appellant has not

shown that even if he had made an error in entering into the plea, it was "prejudicial" within the meaning of the statute.

At its core, this case comes down to answering the question: Can a defendant be told repeatedly that his plea will result in deportation, confirm he understood, present no contrary evidence from the attorney who advised him, and then withdraw the plea with the claim that he did not understand he would be deported? Our answer under the facts of this case is "no." The trial court properly denied appellant's motion to vacate his conviction pursuant to section 1473.7.

## DISPOSITION

The order is affirmed.

## CERTIFIED FOR PUBLICATION

HARUTUNIAN, J.*

We concur:

GRIMES, Acting P. J.

STRATTON, J.

---

* Judge of the San Diego Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.