Filed 5/25/22  P. v. Vasquez CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>ALVARO ALEXIS VASQUEZ<br><br>Defendant and Appellant. | B313809<br><br>(Los Angeles County<br>Super. Ct. No. GA061406) |

APPEAL from an order of the Superior Court of Los Angeles County.  Michael D. Carter, Judge.  Affirmed.

U.S. Law Center and Sanjay Sobti for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Roberta L. Davis and Stephanie A. Miyoshi, Deputy Attorneys General, for Plaintiff and Respondent.

―――――――――――

## INTRODUCTION

In 2019, appellant Alvaro Alexis Vasquez filed a motion to vacate his 2005 conviction for robbery, as he was currently facing deportation proceedings due to the conviction. He claimed he did not understand the adverse immigration consequences of pleading no contest in 2005 because he was not a "fluent English speaker" and did not have a Spanish interpreter present at the hearings. The trial court denied the motion without prejudice.

In 2020, appellant filed his second motion to vacate the 2005 conviction. He claimed to have new evidence in support of his motion. After argument, the trial court found appellant's new evidence was insufficient, and denied the second motion with prejudice. Appellant appeals from the order denying his second motion.

We find appellant's arguments unavailing and affirm the trial court's order.

## FACTUAL AND PROCEDURAL BACKGROUND

I.  2005 Conviction for Robbery

Appellant was born in El Salvador. In 1997, he moved to the United States when he was 11 years old. On May 18, 2004, appellant, then 18 years old, acquired his status as a legal permanent resident in the United States.

One year later, on May 19, 2005, the People filed a felony complaint against appellant, charging him with the crime of second degree robbery for "unlawfully, and by means of force and fear" taking personal property from victim Kim Gyu, in violation of Penal Code[1] section 211. The complaint also alleged, under

---

[1] Undesignated statutory references are to the Penal Code.

2

section 12022, subdivision (d), that a principal (not appellant) was armed with a firearm during the commission of the robbery, and that appellant knew the principal was armed.[2]

Four hearings occurred in this criminal case—on September 30, 2005, October 11, 2005, October 13, 2005, and October 26, 2005. We were not provided a copy of the reporter's transcript of these four proceedings.[3] We glean the following from the minute orders of those proceedings.

On September 30, 2005, appellant "state[d] [his] true name as charged." Appellant was represented by public defender Stephan Boysaw. Appellant was "advised of the following rights orally" including: "If you are not a citizen, you are hereby advised that a conviction of the offense for which you have been charged will have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States." The September 30, 2005 minute order does not state an interpreter was present at the hearing.

At the early disposition hearing held October 11, 2005, appellant was present with court-appointed public defender

---

[2] On March 27, 2005, appellant and co-companion "pointed a handgun at victim inside a parking structure" and "fled with victim's money, CDL and wristwatch."

[3] The record provides that the court reporter listed for the hearing held October 26, 2005 has "retired from the Los Angeles Superior Court and is no longer preparing transcripts." Per Government Code section 69955, subdivision (e), "court reporters' notes may be destroyed upon the order of the court after 10 years from the taking of the notes in criminal proceedings."

Steven E. Kaplan (Kaplan). The minute order does not state an interpreter was present.

At the preliminary hearing held October 13, 2005, appellant was present in court with counsel Kaplan; no interpreter was identified as present in court. It is noted appellant "is to retain private counsel to be present on the next court date."

On October 26, 2005, appellant was present in court along with his appointed counsel Kaplan; once again, an interpreter was not listed in the minute order as among those present at the hearing. Appellant was advised of the effects of a no contest plea. He was further advised: "If you are not a citizen, you are hereby advised that a conviction of the offense for which you have been charged will have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States." Appellant was advised of and "personally and explicitly" waived his right to a jury trial; his right to confront and cross-examine witnesses; his right to subpoena witnesses into court to testify; his right against self-incrimination. The court found each such waiver knowingly, understandingly, and explicitly made. Appellant pled no contest.

"Counsel and [appellant] stipulate[d] to the use of the early disposition report for purposes of sentencing." The early disposition probation officer's report and criminal history assessment included information from appellant's girlfriend of three years, Jasmine Chimil.[4] She reported appellant had lived in Los Angeles County for eight years. He currently lived with

---

[4] It is specifically noted that Jasmine Chimil provided this information in "Lang: English."

his mother and cousin. His father resided in El Salvador. Chimil also reported appellant worked as a "full-time stocker" at a Staples store in Los Angeles for the last 14 months. Appellant "completed his G.E.D."; before that, he was a "full-time high school student."

The court found appellant guilty, sentenced him to 365 days in county jail, placed him on three years' formal probation, and ordered him to pay restitution.

In a later probation report dated June 18, 2008, appellant told his probation officer he was "working full time at Westlake Company as a title specialist for the past [two] years."

## II.    Appellant's Petition for Dismissal

Twelve years after his conviction, on December 26, 2017, appellant filed a petition for dismissal pursuant to section 1203.4, requesting he be permitted to withdraw his 2005 plea, the finding of guilt be set aside, and a plea of not guilty be entered and the action dismissed. The petition alleged he had fulfilled the conditions of probation for the entire period.

On January 24, 2018, the court denied the petition without prejudice. The court found appellant "had paid only approximately $1000 of the $2307.50 owed" to the victim Kim Gyu, even though appellant "was employed and had the ability to pay restitution" in full.

## III.    Deportation / Removal Proceedings

On July 14, 2019, U.S. Immigration and Customs Enforcement (ICE) officers took appellant into custody and initiated removal proceedings. Appellant was deemed deportable under the Immigration and Nationality Act (8 U.S.C.

5

§ 1227(a)(2)(A)(i), (iii)), based on his 2005 robbery conviction, an aggravated felony and crime involving moral turpitude.

IV.   Appellant's First Motion to Vacate

On September 30, 2019, appellant filed his first motion to vacate the 2005 conviction pursuant to section 1473.7.  Appellant alleged his "first language is Spanish" and that at "the time of his plea, [he] was not a fluent English speaker" and "did not have an interpreter at his hearings."  He alleged he "did not understand the immigration consequence of his plea because he did not have an interpreter."  He argued he was prejudiced and his constitutional rights were violated because he "unknowingly entered a guilty plea to a conviction that rendered him . . . deportable."  He alleged he "would not have agreed to the plea bargain now that he understands [it] has life-destroying consequences"; the United States "is home for [him]" and his "entire family lives in the United States," including his fiancée, his 12-year-old son[5], and his mother.

In support of his motion, appellant submitted his sworn declaration, a letter from his fiancée Patricia Toscano, a letter from his former manager at Westlake Financial Services Carlos Cardona, and letters from family and friends attesting to his character.

Appellant's sworn declaration set out the following facts. Appellant is a citizen of El Salvador, and a United States legal permanent resident.  He was a legal permanent resident at the time he entered his plea in 2005.  His counsel during the 2005 proceedings, i.e., Kaplan, "did not inform [him] that the charge

---

[5]   Appellant's son was born here and is an American citizen.

6

[he] pled to is a deportable charge . . . and that [his] conviction is a bar to U.S. citizenship." Also, while appellant's first language was Spanish and his English "was not as fluent," he "did not have an interpreter at [the] hearings" which precluded him from understanding the adverse immigration consequences of taking the plea. He "would have never pleaded guilty and risked permanent separation from [his] family . . . if [he] had been advised of the consequences of pleading guilty to the [2005] charges." He would have instead opted to proceed to trial.

Patricia Toscano provided the following in her letter: She is a licensed marriage and family therapist. She has known appellant for 6.5 years and is his fiancée. She met appellant when he was "working at Wilshire Credit Consumer while simultaneously trying to obtain a nutritionist degree from LA Trade Tech." During their relationship, he also worked at Lobel Financial. Toscano and appellant "are currently working on opening up a Whole-Food Plant Based Restaurant where he intends to also present seminars about the impact nutrition has on health and disease and I intend to present seminars on how nutrition impacts mental health."

Carlos Cardona, appellant's former manager at Westlake Financial Services, stated he interviewed and hired appellant in 2007 "as a customer service agent." Cardona "saw his potential and his eagerness to succeed [and] further his career within the company." Appellant became a "Title Specialist working directly with the Department of Motor Vehicles" within a few years. Appellant was "responsible to perfect our titles as we boarded new loans."

V.    Hearing and Ruling on First Motion to Vacate

7

On January 17, 2020, the hearing on appellant's first motion to vacate took place. We glean the following from the minute order, as we were not provided a copy of the reporter's transcript of the hearing. Appellant's mother and fiancée testified. The court took the matter under submission.

On March 3, 2020, the trial court issued its written ruling, denying the motion *without prejudice*. It found appellant's evidence did not establish by a preponderance of the evidence that the lack of an interpreter constituted prejudicial error.

The court referred to evidence provided by appellant that it considered in making its decision—most of which is not provided in the record before us. The court referred to: 1) appellant's sworn declaration; 2) the "testimony of his mother, to the effect that he spoke only Spanish in the home"; 3) the probation officer's early disposition report which said appellant had completed his G.E.D.; 4) appellant's high school transcript showing he attended public middle school and high school from 1997 to 2002 and he took "English As a Second Language [(ESL)] class most recently in Fall Semester, 2001–2002"; and 5) a letter from the general manager at Staples, who stated appellant worked as "an office supply associate" at Staples since July 2004, whose job duties included "customer service, stocking shelves and cashiering," and who "sometimes train[ed] new associates" since he was "a model employee."

The court noted "in all misdemeanor and felony criminal proceedings, certified interpreters have been available to all non-English speaking defendants for decades preceding [appellant]'s case." The court found while it is possible the court and defense counsel failed to notice appellant's English was deficient, it was "[m]ore likely, defense counsel and the defendant himself did not

8

request an interpreter because it was evident that he did not need one. This conclusion is supported by the facts that, before the time of his plea, [appellant] had been attending public schools . . . for years and had been working in retail as a cashier and customer service person for at least a year." The court emphasized appellant's "own declaration does not state that he ever requested an interpreter on any of his three court appearances." Based on the foregoing, the court found appellant's evidence did not establish that the absence of an interpreter constituted prejudicial error under the statute.

VI.     Appellant's Second Motion to Vacate

On October 8, 2020, appellant filed his second motion pursuant to section 1473.7. Appellant essentially made the same arguments based on the same facts he had alleged in support of his first motion to vacate. However, he stated he was "refil[ing] the motion" with "additional evidence" in support, and urged the court to "reconsider its prior decision and . . . set aside his guilty plea."

Appellant submitted, as additional evidence, his high school transcript. The transcript shows appellant received a C in his ESL Intermediate class during Fall and Spring semesters in 8th grade (1998–1999). The transcript also shows appellant received a C in his ESL Advanced class during Fall semester and an F during Spring semester in 9th grade (2000–2001).

Appellant also submitted, as new evidence, a letter dated May 8, 2020 from Staples HR Services that confirmed appellant's "termination of employment" from Staples on January 11, 2007. The letter referred to appellant's former job title as "associate office supply." Appellant also provided, as an exhibit, a letter dated May 19, 2020 from the Registrar's Office of Pomona Unified

9

School District.  The letter verified appellant registered and attended the Adult and Career Education department's G.E.D. program from September to November 2017 for a total of 81.5 hours.

In support of his second motion, appellant submitted a more recent declaration; for the most part, it set out the same information as his declaration from the first motion to vacate. It provided the following additional information:  Appellant's "primary language at home growing up was Spanish" and his "entire family speaks only Spanish at home."  He was an ESL student who "received C grades in the intermediate level and failed the advanced level."  He took G.E.D. classes in 2017, "12 years since [his] conviction."  He was "employed at Staples as a supply stocker" and "did not have work in customer service nor did [he] have any direct communication with customers."

On December 18, 2020, appellant filed a supplemental exhibit for the court's consideration—notes from Millennium Medical Associates regarding appellant's visit two days prior, on December 16, 2020.  The notes state appellant made the appointment to seek treatment for adult ADHD.  The notes expressly provide: "Specifically, [appellant] state[d] 'Had enough dealing with too many racing thoughts and my lack [of] focus has been very low this past [few] months.' "  The notes also provide appellant "state[d] he feels his brain 'doesn't stop.' "

On April 27, 2021, appellant filed another supplemental exhibit for the court—the sworn declaration of Kaplan.  Kaplan stated he was appointed to represent appellant when he was employed as a deputy public defender.  He represented appellant at his plea and sentencing hearing.  Kaplan has "no recollection of the facts of the case" and "no recollection of what [he] did or did

10

not do" in the case. He has "no recollection of discussing [appellant]'s immigration status" and "no recollection if [he] provided immigration advisements" to appellant. Kaplan did not recall if appellant spoke English or Spanish. Kaplan was listed as an "inactive attorney."

VII.   Hearing and Ruling on Second Motion to Vacate

On May 24, 2021, the trial court heard appellant's second motion to vacate. The court explained that because its denial of the first motion was without prejudice, "you can bring in new information." The court would "reconsider" if appellant has "something new." It explained "this is not an en banc review" and it would not go "back to review everything else that . . . [was] already ruled on" via the first motion. "The only thing [the court was] considering is what is new and whether or not that would change the decision."

During the hearing, the clerk of the court was asked whether it is "always the practice of the clerk's office when preparing a minute order to record whether or not the defendant was assisted by a Spanish interpreter or interpreter of any language?" The clerk responded: "Yes. If the defendant is present and an interpreter was used, we put that in the minute order."

After hearing argument, the trial court denied appellant's second motion with prejudice. The court found the additional information appellant provided "is all information that could have and should have been presented to the court at the time of the original hearing." The court "does not find that there is any new information to change or any new sufficient information to change the ruling; and the court is going to stand by [the original court's] ruling of the denial of the petition."

11

Appellant timely appealed.

## DISCUSSION

I.   Applicable Law

Mandatory deportation from the United States is an immigration consequence when a defendant is convicted of a crime deemed an aggravated felony under federal immigration law.  (*Moncrieffe v. Holder* (2013) 569 U.S. 184, 187–188; 8 U.S.C. § 1228(c) [aggravated felony is conclusively presumed deportable].)  With respect to appellant's case, a violation of section 211 constitutes an aggravated felony, a deportable offense under federal law.  (8 U.S.C. § 1227(a)(2)(A)(iii) ["Any alien who is convicted of an aggravated felony at any time after admission is deportable"].)

Section 1473.7 authorizes a person no longer in criminal custody to file a motion to vacate a conviction or sentence for any of the following reasons: "(1) The conviction or sentence is legally invalid due to prejudicial error damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a conviction or sentence. . . . [¶] 2) Newly discovered evidence of actual innocence exists that requires vacation of the conviction or sentence as a matter of law or in the interests of justice." (§ 1473.7, subds. (a)(1), (2).)  A motion based on newly discovered evidence must be filed "without undue delay from the date the moving party discovered, or could have discovered with the exercise of due diligence, the evidence that provides a basis for relief under this section." (*Id.*, subd. (c).)

Effective January 1, 2019, legislative amendments to section 1473.7 afforded a defendant relief under the statute

12

without a showing of ineffective assistance of counsel under the *Strickland* standard. (*People v. Camacho* (2019) 32 Cal.App.5th 998, 1005.) To establish prejudice, a defendant must show by a preponderance of the evidence that he did not meaningfully understand or knowingly accept the actual or potential adverse immigration consequences of the plea. (*Id.* at pp. 1010–1011; see *People v. Mejia* (2019) 36 Cal.App.5th 859, 862 (*Mejia*); see *People v. Martinez* (2013) 57 Cal.4th 555, 565 (*Martinez*) [defendant may show prejudice by convincing the court that he "would have chosen to lose the benefits of the plea bargain despite the possibility or probability deportation would nonetheless follow"].) A fact is proved by a preponderance of the evidence if it is more likely than not that the fact is true. (*People v. Rodriguez* (2021) 60 Cal.App.5th 995, 1003.)

The key to section 1473.7 is " 'the mindset of the defendant and what he or she understood—or didn't understand—at the time the plea was taken.' " (*Mejia, supra,* 36 Cal.App.5th at p. 866.) Factors relevant to this inquiry include appellant's ties to the United States, the importance appellant placed on avoiding deportation, appellant's priorities in seeking a plea bargain, and whether appellant had reason to believe an immigration-neutral negotiated disposition was possible. (*People v. Vivar* (2021) 11 Cal.5th 510, 529–530 (*Vivar*).)

II.    Standard of Review

The California Supreme Court recently determined the standard of review for section 1473.7 motion proceedings. In *Vivar,* the Court endorsed the independent standard of review. (*Vivar, supra,* 11 Cal.5th at p. 524.) Under independent review, an appellate court exercises its independent judgment to determine whether the facts satisfy the rule of law. (*Id.* at

13

p. 527.) Independent review is not the equivalent of de novo review. (*Ibid*.) An appellate court may not simply second-guess factual findings that are based on the trial court's own observations. (*Ibid*.) Factual determinations by the trial court are given particular deference, even though courts reviewing such claims generally may reach a different conclusion from the trial court on an independent examination of the evidence even where the evidence is conflicting. (*Ibid*.) In section 1473.7 motion proceedings, appellate courts should "give particular deference to factual findings based on the trial court's personal observations of witnesses." (*Id*. at pp. 527–528.) Where the facts derive entirely from written declarations and other documents, however, there is no reason to conclude the trial court has the same special purchase on the question at issue; as a practical matter, the trial court and this court are in the same position in interpreting written declarations when reviewing a cold record in a section 1473.7 proceeding. (*Id*. at p. 528.) Ultimately it is for the appellate court to decide, based on its independent judgment, whether the facts establish prejudice under section 1473.7. (*Ibid*.)

III.    Analysis

Appellant contends the trial court erred when it denied his motion to vacate the conviction because he satisfied the requirements of section 1473.7. He repeats his argument that the absence of a Spanish interpreter during the plea colloquy on October 26, 2005 constituted prejudicial error affecting his ability to knowingly and meaningfully understand the adverse immigration consequences of accepting the plea. He argues: "Despite the declarations, letters, proof of his prior position [at Staples], his ESL classes, evidence previously not available that

14

were submitted by [appellant], the [c]ourt failed and refused to consider these as new evidence." He claims the court "stonewalled [appellant]'s arguments with the only explanation that [it] did not want to disturb the prior decision."

Section 1473.7, subdivision (a)(1), requires appellant to show that his "*ability to meaningfully understand, defend against, or knowingly accept* the actual or potential adverse immigration consequences of a conviction or sentence" was damaged by an error. (Italics added.) Appellant has failed to do so.

We note the absence of a reporter's transcript for appellant's hearings prevents us from reviewing any discussions held on the record, as well as any advisements or information on adverse immigration consequences that may have been given other than what was noted in the minute order. Also, Kaplan's declaration was not informative, as he does not recall any information pertaining to his representation of appellant. Thus, we can only speculate as to why there was no interpreter assisting appellant during his criminal case.

We are not persuaded by appellant's argument that the absence of an interpreter at the plea prejudiced him because he was not fluent in English. The only evidence in support is appellant's declaration. An appellant seeking to set aside a plea must do more than simply claim he did not understand the immigration consequences of the plea. (*People v. Abdelsalam* (2022) 73 Cal.App.5th 654, 664 (*Abdelsalam*).) The claim must be corroborated by objective evidence beyond appellant's self-serving statements. (*Ibid.*) "It is up to the trial court to determine whether the defendant's assertion is credible, and the court may reject an assertion that is not supported by an explanation or

15

other corroborating circumstances." (*Martinez*, *supra*, 57 Cal.4th at p. 565.) We find it telling that appellant's own declaration does not state that he ever requested an interpreter during any of the four proceedings held in 2005.

Similarly, we find unpersuasive appellant's assertion that had he been properly advised he was facing mandatory deportation, he would have insisted on an immigration-neutral disposition and, failing that, gone to trial instead of accepting the plea agreement. Courts should not upset a plea solely because of post hoc assertions from a defendant about how he would have pleaded but for the deficiencies; judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences. (*People v. Ogunmowo* (2018) 23 Cal.App.5th 67, 78.)

Relying on contemporaneous evidence in the record, appellant's girlfriend at the time reported that he had "completed his G.E.D." after attending high school full-time. This tends to indicate appellant understood English to a reasonable extent. Appellant submitted as new evidence via his second motion a letter dated May 19, 2020 from Pomona Unified School District's Registrar's Office that specified appellant registered and attended their G.E.D. program from September to November 2017. He alleged this shows he had not taken a G.E.D. class until 12 years after his conviction. However, this does not disprove whether appellant had completed his G.E.D. via another program or school prior to the 2005 proceedings, as stated by his then-girlfriend of three years.

Relying on other contemporaneous evidence, a letter from appellant's Staples general manager described appellant as an "office supply associate" from 2004–2005, whose job duties

16

included "customer service, stocking shelves and cashiering" and "sometimes training new associates." Appellant argued he did not have direct communication with customers and was usually in the back of the store. He submitted via his second motion, as new evidence, a copy of a letter from Staples HR services that specified appellant's "former job title" as "associate office supply." Contrary to appellant's assertion, however, this does not negate or contradict the portion of the general manager's letter that described appellant's duties as "customer service" and "cashiering" in addition to "stocking shelves"—which tends to indicate appellant was able to communicate and/or understand English to some extent. The letter from Staples HR merely confirmed the title of appellant's position at Staples.

The undisputed facts are that appellant had lived in the United States for eight years at the time of his conviction, having arrived when he was 11 years old. Appellant's school transcripts show he attended public middle school and high school from 1997 to 2002. Nothing indicates his classes were held in Spanish. Appellant's employment history demonstrates he has worked at a credit consumer agency, a financial company, a title company; no evidence was provided to indicate these were Spanish-speaking only jobs.

Appellant refers to his transcripts that show he received a C in his ESL Intermediate class in 8th grade (1998–1999) and a C and an F in his ESL Advanced class in 9th grade (2000–2001). He relies on this as proof that he was not fluent in English at the time of his plea four years later in October 2005. We find that unpersuasive. Additionally, his poor grades do not necessarily demonstrate an inability to understand English and could

17

instead indicate a lack of interest or effort (especially as the transcripts show an overall pattern of failing grades).

The trial court found the evidence insufficient to warrant granting the second motion to vacate; it found the additional information provided was "all information that could have and should have been presented to the court at the time of the original hearing." The trial court below deferred to all factual findings based on oral testimony given at appellant's first motion to vacate. We see no reason to depart from the maxim and defer to any factual findings made by the trial court in the underlying proceedings. (See *Vivar*, *supra*, 11 Cal.5th at p. 524 [factual determinations by the trial court are given particular deference; an appellate court may not simply second-guess factual findings that are based on the trial court's own observations].)

We find unavailing appellant's reliance on the December 16, 2020 notes from Millennium Medical Associates about appellant's appointment to seek treatment for adult ADHD. This is not contemporaneous evidence from the time of appellant's 2005 plea deal. More importantly, notes from a December 2020 medical appointment is not evidence that appellant had or suffered from ADHD 15 years prior—in 2005. There is also no evidence or expert testimony in the record regarding whether appellant's claimed ADHD had any effect on his ability to understand the adverse immigration consequences of accepting the plea deal, communicated in English in 2005.

Nor are we convinced by appellant's insistence that he would have opted for trial had he been properly advised of the immigration consequences. We might speculate that remaining in the country was important to appellant as the United States "is home for [him]" and his mother, fiancée, and son, but whether

that consideration rose to preeminence over avoiding a longer prison sentence *at the time of taking the plea* in 2005 is speculative based on the evidence before the trial court. Undoubtedly, removal from the United States after creating a life here is a nightmare; however, the test for prejudice considers what appellant would have done *at the time of the plea* and not the consequences appellant currently faces.  (See *Martinez*, *supra*, 57 Cal.4th at p. 564.)  Appellant offered no evidence that at the time of the plea avoiding deportation was a priority of his and that he communicated that priority to his counsel or the court.  He also failed to present evidence that at the time of the plea, he "had reason to believe an immigration-neutral negotiated disposition was possible." (*Vivar, supra*, 11 Cal.5th at p. 530.) He did not offer any evidence that alternative, non-deportable dispositions would have been available and acceptable to the prosecutor.  (*Abdelsalam, supra*, 73 Cal.App.5th at p. 665; *People v. Olvera* (2018) 24 Cal.App.5th 1112, 1118.)

Exercising independent review, we conclude appellant did not carry his burden for section 1473.7 relief.

## DISPOSITION

The order denying appellant's motion to vacate is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**



STRATTON, P. J.

We concur:



GRIMES, J.



HARUTUNIAN, J.*

---

\*     Judge of the San Diego Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.