Filed 6/28/18

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

|  |  |
|---|---|
| THE PEOPLE, | 2d Crim. No. B281767 |
| Plaintiff and Respondent, | (Super. Ct. No. 2005030430) |
| v. | (Ventura County) |
| EFRAIN OLVERA, | |
| Defendant and Appellant. | |

      Efrain Olvera appeals an order denying his motion to vacate judgment and withdraw his 2005 plea of no contest to one count of conspiracy to transport cocaine for sale.  (Pen. Code,[1] § 182, subd. (a)(1); Health & Saf. Code, § 11352, subd. (b).)  He contends his trial counsel rendered ineffective assistance in 2005 when he did not advise him of the immigration consequences of his plea or attempt to negotiate an immigration-neutral disposition.  Olvera's motion was timely under a new statute that allows him to move to vacate a plea that has unexpected immigration consequences as a result of ineffective assistance if

---

     [1] All statutory references are to the Penal Code unless otherwise stated.

the motion is brought with "due diligence" after deportation proceedings commence.  (§ 1473.7.)  But Olvera does not demonstrate that his counsel's performance was deficient.  (*Strickland v. Washington* (1984) 466 U.S. 668, 688 (*Strickland*).)  We therefore affirm.

FACTUAL AND PROCEDURAL HISTORY

Olvera immigrated from Mexico in 1995.  He is a permanent legal resident.  He moved to Oxnard in 1998, married in 2001, and bought a business and a home.  He and his wife have a daughter who is a citizen of the United States.

In 2005, Olvera pled no contest to transporting cocaine for sale in exchange for "time served" and three years of formal probation.  The charge arose from an investigation into a drug trafficking organization that was led by two other men, during which officers executed a warrant at Olvera's home.  Officers seized a black fanny pack containing a pound of cocaine and camera batteries.  Olvera denied the pack was his, and said the pack was left in his garage by a friend.

When he entered his plea, Olvera signed a form with boilerplate language about immigration consequences:  he acknowledged that the law concerning the effect of "a criminal offense of any kind on my legal status as a non-citizen will change from time to time," so "I hereby expressly assume that my plea . . . <u>will</u>, now or later, result in my deportation, exclusion from admission or readmission," and "denial of naturalization and citizenship."  He acknowledged that his attorney "has gone over this form with me."  His attorney represented that he "explained the direct and indirect consequences of this plea," to Olvera.  At the change of plea hearing, Olvera again acknowledged that he went over the form with his attorney and

2

an interpreter.  There was no specific colloquy about immigration consequences.

The charge to which Olvera pled is an aggravated felony under federal immigration law.  It triggers mandatory removal.  (8 U.S.C. § 1101(a)(43)(B), (U).)  In support of his motion to vacate, Olvera acknowledges that his attorney reviewed the plea form with him, but declares he does not "recall discussing the specific immigration consequences of [his] plea with [his] attorney, i.e., that this conviction would be a bar to [his] naturalization and that [he] could be deported and denied readmision to the United States."  He declares his attorney did not recommend that he consult with an immigration attorney, and he does not "recall [his] attorney suggesting a plea to an alternative lesser charge, to avoid the serious immigration consequences [he] now face[s]."

Olvera complied with the terms of his probation.  In 2007, the court ordered early termination.  (§ 1203.3.)  It reduced the offense to a misdemeanor and ordered the "guilty plea [is] withdrawn; not guilty plea entered or verdict of guilty is set aside.  The case is dismissed pursuant to [section] 1203.4 of the Penal Code."

In 2016, Olvera's family became concerned about being "torn apart because of the stricter rules that are being proposed for non-citizens."  Olvera moved to withdraw his plea based on his Sixth Amendment right to the effective assistance of counsel, which was violated when his trial counsel did not advise him of the immigration consequences of his plea.  Along with his declaration, he submitted records of his legal status, business records, tax returns, and letters from his wife and daughter regarding their dependence on him.  He declared that if he had

3

been properly informed, he would have sought a different disposition or gone to trial. He did not submit a declaration from trial counsel.

The trial court denied the motion. It observed that the language in the plea form was "pretty clear." The court distinguished the form from others that warn a plea "may have" adverse immigration consequences.

DISCUSSION

The trial court did not err when it denied Olvera's motion because he did not establish deficient performance. Counsel advised him in writing to assume that the plea "will" have deportation consequences, and Olvera does not identify any alternate immigration-neutral disposition that counsel could have negotiated on his behalf.

Olvera first moved for relief under sections 1016.2 (Legislative findings regarding immigration consequences); 1016.3 (prosecutor's duty to consider avoiding immigration consequences in plea negotiations); and 1016.5 (court's failure to give statutory advisement). Sections 1016.2 and 1016.3 do not apply because they were enacted in 2015 and are not retroactive. (§ 3.) And the court's duty under section 1016.5 was satisfied by the waiver form which Olvera signed, as he concedes. (*People v. Superior Court* (*Zamudio*) (2000) 23 Cal.4th 183, 207-208.)

Olvera supplemented his motion in January 2017 to invoke the provisions of section 1473.7 when it became operative. That statute allows a person like Olvera, who is no longer imprisoned or restrained, to move to vacate the conviction entered on his no contest plea, based on ineffective assistance of counsel that gives rise to unexpected immigration consequences. Olvera must establish by a preponderance of the evidence that

4

his conviction is "invalid due to a prejudicial error" that damaged his "ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences" of the plea. (§ 1473.7, subd. (a)(1).) To establish "prejudicial error," he must meet the *Strickland* criteria. (*In re Resendiz* (2001) 25 Cal.4th 230, 248, abrogated in part on other grounds in *Padilla v. Kentucky* (2010) 559 U.S. 356, 370 (*Padilla*).)

We independently review the order denying the motion to vacate which "presents a mixed question of fact and law." (*In re Resendiz, supra*, 25 Cal.4th at p. 248; *People v. Ogunmowo* (2018) 23 Cal.App.5th 67, 76.) We defer to the trial court's factual determinations if supported by substantial evidence, but exercise our independent judgment to decide whether the facts demonstrate deficient performance and resulting prejudice. (*In re Resendiz*, at p. 249.) Since 2001, it has been settled in California that ineffective assistance claims may be viable despite the collateral nature of immigration consequences and despite statutory warnings that the plea "may" have such consequences. (*Ibid.*)

To prevail, Olvera must demonstrate that (1) counsel's representation fell below an objective standard of reasonableness, as judged by "prevailing professional norms" (*Strickland, supra*, 466 U.S. at p. 688), and (2) "but for counsel's unprofessional errors, the result of the proceeding would have been different" (*id.* at p. 694; *Padilla, supra*, 559 U.S. at p. 366); that is, "a reasonable probability exists that, but for counsel's incompetence, he would not have pled guilty and would have insisted, instead, on proceeding to trial" (*In re Resendiz, supra*, 25 Cal.4th at p. 253).

5

The parties disagree whether professional norms in 2005 imposed upon defense counsel an affirmative duty to investigate and advise on immigration consequences. Olvera points to evidence of such norms in ABA Standards and practice guides dating from the 1990's (see, e.g., *Padilla, supra,* 559 U.S. at p. 367), and he points to pre-2005 California decisions recognizing a duty to advise. (*People v. Soriano* (1987) 194 Cal.App.3d 1470, 1481-1482 [vacating judgment where counsel "merely warned defendant that his plea might have immigration consequences," based on an ABA standard that: "'[W]here the defendant raises a specific question concerning collateral consequences (as where the defendant inquires about the possibility of deportation), counsel should fully advise the defendant of these consequences'"]; *People v. Barocio* (1989) 216 Cal.App.3d 99, 103-104 [vacating sentence (but not plea) so counsel could request a sentence with a recommendation against deportation because counsel "failed to advise [defendant] of [this] deportation remedy," thereby falling short of his duty to "make a rational and informed decision on strategy and tactics founded on adequate investigation and preparation"]; *People v. Bautista* (2004) 115 Cal.App.4th 229, 238, 241 (*Bautista*) [issuing order to show cause on petition for writ of habeas corpus where counsel failed to investigate an immigration-neutral upward plea because it "never crossed his mind"].) The People counter that the United States Supreme Court did not recognize a Sixth Amendment duty to advise on collateral immigration consequences until 2010 (*Padilla, supra,* 559 U.S. at p. 367) and that the court has since held that this "new rule" is not retroactive (*Chaidez v. United States* (2013) 568 U.S. 342, 357-358).

6

We note that the California Supreme Court disavowed the collateral-direct consequences distinction in 2001 (nine years before *Padilla*), and expressly reserved the question whether there was at that time an affirmative duty to advise (*In re Resendiz*, *supra*, 25 Cal.4th at pp. 240, 248, 250). But we need not express an opinion on the issue because even if Olvera's counsel had an affirmative duty to advise him on the immigration consequences of his plea, he satisfied it. The admonition was boilerplate, but it was unequivocal and accurate. As the trial court observed, the written admonition on the plea form was "pretty straightforward, especially for 2005."

Olvera also contends counsel's performance was deficient when he did not investigate an immigration-neutral disposition. By 2005, a California court had concluded that the mere failure to investigate an immigration-neutral alternative disposition in plea bargaining could constitute deficient performance. (*Bautista*, *supra*, 115 Cal.App.4th at p. 238.) But Olvera's showing is insufficient to prevail under this theory of deficiency.

Unlike the petitioner in *Bautista*, he does not identify any available immigration-neutral disposition. In *Bautista*, counsel advised the defendant he "would be deported" as a result of a plea of guilty to possessing marijuana for sale, but counsel did not attempt to plead upward to an available immigration-neutral offense. (*Bautista*, *supra*, 115 Cal.App.4th at p. 238.) An expert in immigration law declared that Bautista could have "pleaded up" to an offense with greater sentencing exposure, but less severe immigration consequences, which the expert believed the prosecutor would have accepted. Prosecutors had agreed to the disposition in similar cases on which the expert had

7

consulted.  (*Id*. at p. 240.)  The *Bautista* court concluded the claim was viable and issued an order to show cause for an evidentiary hearing in the trial court.  (*Id*. at pp. 241-242.)  Olvera declares his counsel never advised him of a "lesser" immigration-neutral offense to which he might have pled.  But he does not identify any immigration-neutral disposition to which the prosecutor was reasonably likely to agree.

Because Olvera has not established that his counsel rendered deficient performance, he is not entitled to relief.  The court did not err when it denied his motion to vacate.

DISPOSITION

The order is affirmed.

CERTIFIED FOR PUBLICATION.


TANGEMAN, J.

We concur:



GILBERT, P. J.



PERREN, J.

8

F. Dino Inumerable, Judge

Superior Court County of Ventura

_____

Robert F. Landheer, for Defendant and Appellant.

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Steven D. Matthews, Supervising Deputy Attorney General, Analee J. Brodie and David Glassman, Deputy Attorneys General, for Plaintiff and Respondent.