Filed 11/15/22  P. v. Ayala CA1/2
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>HERBERTH NOEL AYALA,<br><br>        Defendant and Appellant. | A163778<br><br>(San Mateo County Super.<br>Ct. No. SC068457A) |

In 2009, defendant Herberth Ayala, a citizen of El Salvador, entered a plea of no contest to one count of assault with a deadly weapon and was sentenced to three years of probation.  Ayala was later deported, reentered the United States without permission, and was charged with illegal reentry in federal court.  In 2021, Ayala filed a motion to withdraw his 2009 plea under Penal Code section 1473.7,[1] arguing that he did not understand his plea's immigration consequence and would not have entered it if he had.  In particular, he alleged that he had been unable to obtain a U-Visa because of his 2009 conviction and that his sentence had been enhanced in his federal reentry case on the basis of that conviction.  The trial court denied the motion, concluding that it was untimely, and that Ayala had failed to establish either that he did not understand the immigration consequences of

---

[1] Further undesignated statutory references are to the Penal Code.

his plea or that had he understood those consequences, he would not have entered the plea.  We affirm.

## BACKGROUND

Ayala entered the United States in 1994 and was granted asylum in 1995.  However, because of misdemeanor convictions he suffered in 1997 and 2005, his asylum status was rescinded and he was ordered removed by an immigration judge on February 5, 2007.  He appealed that removal order to the Board of Immigration Appeals, which upheld it on April 18, 2008.  Ayala appealed that decision to the Ninth Circuit Court of Appeals.

On December 20, 2008, while his Ninth Circuit appeal was pending, Ayala was involved in a fight outside a bar, during which he picked up a brick and threw it, striking one victim in the face and another in the shoulder.  When Ayala was subsequently arrested, he was found in possession of 0.20 grams of cocaine.

On April 24, 2009, the San Mateo County District Attorney filed an information charging Ayala with two counts of assault with a deadly weapon—a brick—and/or by means of force likely to produce great bodily injury (§ 245, subd. (a)(1)) (counts 1 and 2) and one count of possession of cocaine (Health & Saf. Code, § 11350, subd. (a)) (count 3).  The information further alleged that counts 1 and 2 were serious felonies within the meaning of section 1192.7, subdivision (c)(23).

On June 29, Ayala entered a plea of no contest to count 2 and admitted that it constituted a serious felony in exchange for the dismissal of the remaining counts and a maximum custody term of six months in county jail.  Ayala signed a Spanish version of a standard plea form, the English version of which stated:  "I understand that if I am not a citizen, conviction of the offense for which I have been charged will have the consequences of

2

deportation, exclusion from admission to the United States or a denial of naturalization."[2] The form also contained a certification by Ayala's plea counsel that he "personally read and explained the contents of the above declaration to the defendant [and] personally observed the defendant fill in date and sign said declaration [and] after having investigated this case and the possible defenses thereto, concurs in the defendant's plea of guilty or nolo contendere to the charge as set forth by the defendant in the above declaration and stipulates there is a factual basis for the plea(s)."

On July 29, the trial court sentenced Ayala to time served, suspended imposition of sentence, and placed Ayala on three years' supervised probation with various terms and conditions.

Ayala was deported in February of 2010, and returned to the United States without permission in May of 2010. The Ninth Circuit Court of Appeals upheld his removal order a year later, on May 19, 2011. (See *Ayala v. Holder* (9th Cir. 2011) 640 F.3d 1095, 1098.)

On July 7, 2021, Ayala filed a motion to vacate his 2009 plea under section 1473.7, which became effective in 2017 and provides that the court shall vacate a conviction or sentence upon a showing, by a preponderance of the evidence, of "prejudicial error damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a plea of guilty or nolo

---

[2] Only the Spanish version of the plea form is in the record, which provides: "Entiendo que si soy ciudando Estados Unidos, la condena por el delito del que se me acusa tendra como resultado que me deporten, y en que se me prohiba la entrada a los Estados Unidos, y me nieguen la naturalizacion." The English version of the form can be found at <https://www.sanmateocourt.org/documents/forms_and_filing/cr-6.pdf>.

contendere." (Former § 1473.7, subd. (a)(1).) The motion attached a two-page declaration signed by Ayala, which included the following allegations:

"2. At the time of pleading guilty, I was not informed by my attorney about the clear immigration consequences of my plea. I was never informed by my attorney that a violation of Penal Code Section 245(A)(1) would make me deportable and inadmissible from the United States.

"3. In addition, I was never informed by my attorney that a conviction under section 245(A)(1) is a crime of violence and crime involving moral turpitude. I did not have any knowledge that my conviction would affect my ability to adjust my status or my U-Visa application.

"4. At no other time was I informed by my attorney, in writing or verbally, of the true and actual immigration consequences of my guilty plea. I did not have any independent knowledge of any immigration consequences.

"5. My attorney did not advise me of the negative immigration consequences that would result from my plea. He did not speak with me about other alternative pleas or sentences that could have protected me from being deportable and inadmissible, or protected me from being placed in removal proceedings. I met my criminal defense attorney two times but we only spoke for a short period. We met one time in the interview room and the other time in court. I never discussed immigration consequences with him.

"6. After pleading guilty, l continued to live without knowledge of any immigration consequences. It was [not] until I was placed into removal proceedings in 2012 that I became aware that my conviction had statutory immigration and discretionary consequences, which placed me at risk of deportation and prevented me from obtaining a U-Visa. In 2012, I was picked up by Immigration authorities when they were looking for my uncle at

4

my uncle's house. I ended up in removal proceedings and was unable to defend my deportation because of this conviction. I was subsequently charged for reentry after deportation. This assault conviction greatly increased the sentence in my reentry case.

"7. I recently applied for a U-Visa and was denied because of this conviction. [¶] . . . [¶]

"11. I would have not pled guilty in this case if I would have had knowledge that my conviction would make me *mandatorily deportable* and *permanently inadmissible*. I, in fact, would have sought, through my attorney, to obtain an alternative disposition without any immigration consequences or would have sought a trial by jury. I had a strong case to go take to trial."

Ayala's motion also attached a presentence investigation report from his federal case, indicating that Ayala was arrested on June 28, 2012 and pleaded guilty to re-entry of a removed alien (8 U.S.C. § 1326) on July 9, 2013. Ayala's 2009 assault conviction resulted in a 16-point enhancement to his offense level under the federal sentencing guidelines.

The motion came on for hearing on September 24, 2021. After hearing argument, the trial court denied the motion, on two bases. The first was that the motion was untimely, since section 1473.7 became effective in 2017 but the motion was not filed until 2021.

The trial court further found that Ayala had not demonstrated that he was unaware of the immigration consequences of his plea, because the advisement on the plea stated that those consequences "will" occur, and there was no credible evidence to the contrary, relying on *People v. Olvera* (2018) 24 Cal.App.5th 1112 (*Olvera*).

The trial court also found that Ayala had not demonstrated that he would not have entered the plea if he had been properly advised, in part because the charge "was [an assault] with a brick, so it doesn't appear to me as if it was a weak case where the defendant had some significant negotiating leverage back at the time."

The trial court went on to conclude that Ayala's declaration was not "persuasive or entirely credible; mainly because it is uncorroborated, and obviously there is a significant motive for the defendant to claim that he didn't understand what was going on at the time of his plea," and detailed certain inconsistencies in the declaration.

Ayala filed a notice of appeal.

## DISCUSSION

### Standard of Review and Applicable Law

At the time of the hearing in this case, section 1473.7 provided that "[a] person who is no longer in criminal custody may file a motion to vacate a conviction or sentence" where the "conviction or sentence is legally invalid due to prejudicial error damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a plea of guilty or nolo contendere. A finding of legal invalidity may, but need not, include a finding of ineffective assistance of counsel."[3] (Former § 1473.7, subd. (a)(1).)

---

[3] Effective January 1, 2022, section 1473.7 subdivision (a)(1) has been reworded without substantive change to provide: "The conviction or sentence is legally invalid due to prejudicial error damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a conviction or sentence. A finding of legal invalidity may, but need not, include a finding of ineffective assistance of counsel." (See Stats. 2021, ch. 420, § 1, eff. Jan. 1, 2022.)

"[S]howing prejudicial error under section 1473.7, subdivision (a)(1) means demonstrating a reasonable probability that the defendant would have rejected the plea if the defendant had correctly understood its actual or potential immigration consequences. When courts assess whether a petitioner has shown that reasonable probability, they consider the totality of the circumstances. [Citation.] Factors particularly relevant to this inquiry include the defendant's ties to the United States, the importance the defendant placed on avoiding deportation, the defendant's priorities in seeking a plea bargain, and whether the defendant had reason to believe an immigration-neutral negotiated disposition was possible. [Citations.]" (*People v. Vivar* (2021) 11 Cal.5th 510, 529–530 (*Vivar*).)

In the trial court, the defendant has the burden of proving prejudicial error "by a preponderance of the evidence." (§ 1473.7, subd. (e)(1).) However, "movants under section 1473.7 must provide evidence corroborating their assertions." (*People v. Rodriguez* (2021) 68 Cal.App.5th 301, 322; see *In re Resendiz* (2001) 25 Cal.4th 230, 253 ["petitioner's assertion he would not have pled guilty if given competent advice 'must be corroborated independently by objective evidence' "]; *People v. Abdelsalam* (2022) 73 Cal.App.5th 654, 664 (*Abdelsalam*) ["A defendant seeking to set aside a plea must do more than simply claim he did not understand the immigration consequences of the plea. The claim must be corroborated by evidence beyond the defendant's self-serving statements"].)

On appeal, a trial court's denial of a section 1473.7 motion is subject to independent review. (*Vivar, supra*, 11 Cal.5th at pp. 525–528.) " '[U]nder independent review, an appellate court exercises its independent judgment to determine whether the facts satisfy the rule of law.' [Citation.] When courts engage in independent review, they should be mindful that ' "[i]ndependent

review is *not* the equivalent of de novo review . . . ." ' [Citation.] An appellate court may not simply second-guess factual findings that are based on the trial court's own observations. [Citations.]" (*Id*. at p. 527.) "Where, as here, the facts derive entirely from written declarations and other documents, however, there is no reason to conclude the trial court has the same special purchase on the question at issue; as a practical matter, '[t]he trial court and this court are in the same position in interpreting written declarations' when reviewing a cold record in a section 1473.7 proceeding. [Citation.] Ultimately it is for the appellate court to decide, based on its independent judgment, whether the facts establish prejudice under section 1473.7." (*Id*. at p. 528.)

**Ayala Failed to Establish That He Did Not Understand the Immigration Consequences of his Plea**

Ayala argues plea counsel failed to advise him of the potential adverse immigration consequences of his plea, and that he did not meaningfully understand those consequences. The record does not support this contention.

As noted, Ayala's plea form stated: "I understand that if I am not a citizen, conviction of the offense for which I have been charged will have the consequences of deportation, exclusion from admission to the United States or a denial of naturalization." Ayala's plea counsel indicated he had "personally read and explained the contents of the above declaration to the defendant [and] personally observed the defendant fill in date and sign said declaration."

*Olvera, supra*, 24 Cal.App.5th 1112, is instructive. There, the defendant signed a plea form that contained the following: " 'I hereby expressly assume that my plea . . . will, now or later, result in my deportation, exclusion from admission or readmission,' " and " 'denial of naturalization and citizenship.' " (*Id*. at p. 1115.) Olvera moved to withdraw

8

his plea based on his Sixth Amendment right to the effective assistance of counsel, which he argued was violated when his trial counsel did not advise him of the immigration consequences of his plea, and later supplemented his motion to invoke section 1473.7 when it became operative in January of 2017. (*Id.* at pp. 1115–1116.) The Court of Appeal concluded that "even if Olvera's counsel had an affirmative duty to advise him on the immigration consequences of his plea, he satisfied it. The admonition was boilerplate, but it was unequivocal and accurate. As the trial court observed, the written admonition on the plea form was 'pretty straightforward, especially for 2005.' " (*Id.* at p. 1117.) The admonition here was equally unequivocal and straightforward.

Despite the fact that the trial court expressly relied on *Olvera*, Ayala does not cite or discuss that case in his opening brief. Ayala did not file a reply brief.

The Attorney General also relies on *Abdelsalam*, *supra*, 73 Cal.App.5th 654, which Ayala likewise does not cite or discuss. There, the defendant initialed an advisement on his plea form stating " 'I understand that if I am not a citizen of the United States, I must expect my plea of guilty or no contest will result in my deportation, exclusion from admission or reentry to the United States, and denial of naturalization and amnesty,' " and initialed next to statements indicating he had read each paragraph and discussed them with his attorney. (*Id.* at p. 662.) At the plea hearing, defendant and his counsel confirmed that they had discussed the immigration consequences.[4] (*Id.* at p. 660.) The Court of Appeal rejected defendant's

---

[4] The record in this case does not contain a transcript of Ayala's plea hearing; thus, we are unable to determine whether the immigration consequences advisement was specifically discussed.

9

argument that he had not been advised of the immigration consequences of his plea for the purposes of section 1473.7, despite statements in his declaration to the contrary:

"A defendant seeking to set aside a plea must do more than simply claim he did not understand the immigration consequences of the plea. The claim must be corroborated by evidence beyond the defendant's self-serving statements. For example, in [*People v.*] *Camacho* [(2019) 32 Cal.App.5th 998], the court found 'defendant's claims of error were supported by his former attorney's undisputed testimony . . . that he misunderstood the potential immigration consequences . . . and he did not explore possible alternatives to pleading to an aggravated felony.' (*Camacho, supra,* 32 Cal.App.5th at p. 1009.) In *Vivar,* the Supreme Court noted that defendant presented counsel's e-mail correspondence and handwritten notes to establish that she did not 'advise him as to the actual immigration consequences of a plea to the drug charge or any other plea.' (*Vivar, supra,* 11 Cal.5th at p. 519.) Our Supreme Court has stated that a defendant's claim that 'he would not have pled guilty if given competent advice "must be corroborated independently by objective evidence." ' [Citations.] 'It is up to the trial court to determine whether the defendant's assertion is credible, and the court may reject an assertion that is not supported by an explanation or other corroborating circumstances.' (*People v. Martinez* (2013) 57 Cal.4th 555, 565 (*Martinez*).)

"Here, appellant offered no contemporaneous evidence such as an affidavit and/or testimony by trial counsel, or counsel's files, notes, or email correspondence. This is a case unlike *Vivar,* where the written advisal informed defendant he 'may' be subject to deportation, and counsel stated 'possible' deportation was discussed with defendant. (*Vivar, supra,*

10

11 Cal.5th at p. 519.)  Appellant has presented no independent evidence that he was told anything other than that he would be deported." (*Abdelsalam*, *supra*, 73 Cal.App.5th at p. 664.)  So too here.

In addition, other aspects of the record indicate that—as the trial court put it—Ayala was no "babe in the woods" with respect to the immigration consequences of his plea.  At the time of the plea in 2009, Ayala had had his asylum status rescinded based on previous misdemeanor convictions, had appealed that decision to the Board of Immigration Appeals, and had a pending appeal of that decision before the Ninth Circuit.  His probation report lists four prior offenses between 1997 and 2007, convictions that presumably came with their own warnings about potential immigration consequences.  In short, we agree with the trial court that Ayala failed to establish that he was not informed of the immigration consequences of his plea.

**Ayala Failed to Establish That He Would Not Have Entered the Plea Had He Been Correctly Advised of the Immigration Consequences**

We also agree with the trial court that Ayala has failed to demonstrate a reasonable probability that he would have rejected the plea if he had correctly understood its actual or potential immigration consequences.  As noted, "[f]actors particularly relevant to this inquiry include the defendant's ties to the United States, the importance the defendant placed on avoiding deportation, the defendant's priorities in seeking a plea bargain, and whether the defendant had reason to believe an immigration-neutral negotiated disposition was possible. [Citations.]" (*Vivar*, *supra*, 11 Cal.5th at pp. 529–530.)

11

In 2009, Ayala had been in the United States some 15 years, after coming to the United States at 21 years old. He was unmarried, but had a girlfriend of two years, and shared custody of a 3-year old son with his ex-girlfriend. Beyond this, there is no independent evidence in the record to suggest that at the time of his 2009 plea, Ayala placed any importance on avoiding deportation—indeed, he had already lost his asylum status and been ordered deported on the basis of his previous convictions—or that his priorities in seeking a plea bargain included avoiding immigration consequences.

There is also no indication that Ayala "had reason to believe an immigration-neutral negotiated disposition was possible." (*Vivar, supra,* 11 Cal.5th at p. 530.) His declaration asserts in general terms that his attorney "did not speak with me about other alternative pleas or sentences that could have protected me from being *deportable* and *inadmissible,* or protected me from being placed in removal proceedings," and that had he known of the immigration consequences of his plea, he "would have sought, through my attorney, to obtain an alternative disposition without any immigration consequences or would have sought a trial by jury." But there is no evidence that any such alternative disposition was available at the time of Ayala's plea. (See *Olvera, supra,* 24 Cal.App.5th at p. 1118 ["Olvera declares his counsel never advised him of a 'lesser' immigration-neutral offense to which he might have pled. But he does not identify any immigration-neutral disposition to which the prosecutor was reasonably likely to agree"]; *Abdelsalam, supra,* 73 Cal.App.5th at pp. 665–666 [no prejudice where defendant "did not offer an expert declaration opining that alternative, nondeportable dispositions would have been available and acceptable to the prosecutor" but merely "engages in speculation that he could have pled to

burglary, without any citation from the record indicating that disposition would have been entertained by the prosecutor"].)

Ayala's opening brief asserts that "alternative immigration-safe plea[s] existed such as Penal Code section 136.1(b)(1) [dissuading a witness], 243(e) [spousal battery], 236 [false imprisonment], 237 [false imprisonment by violence, menace, fraud, or deceit], or 459 [burglary]." But Ayala does not explain how the facts of his offense—throwing a brick that struck two victims and being subsequently arrested in possession of 0.2 grams of cocaine—would have provided any factual basis for a plea to any of these offenses. And even if such pleas were available, he identifies no evidence in the record that they would have been entertained by the prosecution. (See *Olvera*, *supra*, 24 Cal.App.5th at p. 1118; *Abdelsalam*, *supra*, 73 Cal.App.5th at pp. 665–666.)

Finally, we reject Ayala's claim of prejudice based on his argument that had he been properly advised he would have gone to trial, based on the unexplained assertion in his declaration that "I had a strong case to go take to trial." As the trial court noted, Ayala struck two victims with a brick on a public street, and it is thus unclear why he would have had a strong case at trial. (See *Abdelsalam*, *supra*, 73 Cal.App.5th at p. 666 ["if appellant had rejected the plea and insisted on a trial, although he 'would for a period have retained a theoretical possibility of evading the conviction that rendered him deportable and excludable, it is equally true that a conviction following trial would have subjected him to the same immigration consequences.' (*In re Resendiz*, *supra*, 25 Cal.4th at p. 254)"].)[5]

---

[5] Because we conclude that the trial court properly denied Ayala's motion on the merits, we need not reach of the issue of whether the motion was timely.

13

## DISPOSITION

The order denying Ayala's section 1473.7 motion is affirmed.

_____
Richman, Acting P. J.

We concur:


_____
Stewart, J.


_____
Van Aken, J. *


*People v. Ayala* (A163778)

    \*Judge of the San Francisco Superior Court, Judge Christine Van Aken, sitting as assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.