Filed 5/7/25  P. v. Pimentel CA4/1
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JUAN GABRIEL PIMENTEL,<br><br>    Defendant and Appellant. | D085451<br><br><br><br>(Super. Ct. No. FWV032487) |


APPEAL from an order of the Superior Court of San Bernardino County, Mary E. Fuller, Judge.  Affirmed.

Aude Ruffing and William Paul Melcher, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Melissa Mandel and James Spradley, Deputy Attorneys General.


Juan Gabriel Pimentel appeals the order denying his motion to vacate a conviction based on a no contest plea he entered in 2007.  He contends the trial court prejudicially erred by refusing to consider his declaration, which

he asserts established that in pleading no contest he did not meaningfully understand the actual or potential adverse immigration consequences of the conviction.  We affirm.

## I.

## BACKGROUND

A.    *Facts from Preliminary Hearing*

On September 30, 2004, law enforcement officers were surveilling a house in Moreno Valley.  Two men exited the house and drove off in a pickup truck to a used car dealership in Rubidoux.  Pimentel arrived at the dealership in an SUV.  After a brief meeting, the three left.

The two men who had met Pimentel returned to the house in Moreno Valley.  They later exited the house, each carrying a red and white box which they placed in the trunk of a Honda Accord parked in the driveway.  The two men drove off in the pickup truck, and a third man exited the house and drove off in the Honda.  They all drove to a commercial parking lot in Rancho Cucamonga, where Pimentel arrived in the SUV.  The pickup truck remained in the parking lot while the Honda and the SUV were driven to a residence in Rancho Cucamonga.

Upon arrival at the residence, Pimentel motioned the driver of the Honda to pull into the garage, and the two then entered the residence.  Approximately 15 to 20 minutes later, the driver of the Honda exited and drove back to the commercial parking lot.  About an hour after that, Pimentel left in the SUV.

After another 15 to 20 minutes, a man arrived at the Rancho Cucamonga residence in a Nissan Sentra, backed into the garage, and then entered the residence.  The surveilling law enforcement officers then executed a search warrant on the residence.  In the trunk of the Nissan, they

2

found approximately $217,000 in United States currency and 25 kilograms of cocaine. The cocaine was in the red and white boxes that earlier had been loaded into the Honda at the house in Moreno Valley. The officers found a rifle, a handgun, and ammunition inside the Rancho Cucamonga residence.

B.    *Criminal Proceedings*

The People charged Pimentel with conspiracy to commit the crime of possession of cocaine for sale (Pen. Code, § 182, subd. (a)(1); Health & Saf. Code, § 11351; count 1), possession of cocaine for sale (Health & Saf. Code, § 11351; count 2), and possession of more than $100,000 with knowledge the money was obtained as the result of unlawful possession of cocaine for sale (*id.*, § 11370.6, subd. (a); count 3). As to counts 1 and 2, the People alleged that the amount of cocaine possessed for sale exceeded 20 kilograms (*id.*, § 11370.4, subd. (a)(1)(D)), and that in committing the crimes Pimentel was personally armed with a firearm (Pen. Code, § 12022, subd. (c)).

On October 3, 2007, Pimentel pled no contest to count 2, possession of cocaine for sale, and admitted the amount of cocaine possessed for sale exceeded four kilograms (Health & Saf. Code, § 11370.4, subd. (a)(1)(B).) The accusatory pleading was amended to reduce the amount of the cocaine possessed for sale. The plea form Pimentel signed included a declaration under penalty of perjury in which he initialed boxes next to statements that he understood and waived his trial-related constitutional rights. He also initialed boxes next to the following statements:

> "14. I understand that if I am not a citizen of the United States, deportation, exclusion from admission to the United States, or denial of naturalization will result from a conviction of the offense(s) to which I plead guilty/nolo contendere (no contest)."[1]

---

[1]    "Any alien . . . in and admitted to the United States, shall, upon the order of the Attorney General, be removed" if the alien "at any time after

3

"19. I have had sufficient time to consult with my attorney concerning my intent to plead guilty/no contest to the above charge(s) (and admit any prior conviction or enhancement). My lawyer has explained everything on this declaration to me, and I have had sufficient time to consider the meaning of each statement. I have personally placed my initials on certain boxes on this declaration to signify that I fully understand and adopt as my own each of the statements which correspond to those boxes."

"21. I can read and understand English."

"22. (If applicable) I understand that a plea of no contest is the same as a plea of guilty in this criminal case and for all purposes has the same consequence as a plea of guilty and can be used against me in a civil lawsuit."

Pimentel's attorney signed the plea form and attested that he "personally read and explained [its] contents" to Pimentel.

In exchange for the no contest plea, the People agreed to dismiss the other charges and allegations. The parties stipulated to a prison term of seven years, the lower term of two years for possession of cocaine for sale (Health & Saf. Code, § 11351) plus a consecutive term of five years for the weight enhancement (*id.*, § 11370.4, subd. (a)(1)(B)).

The trial court had a colloquy with Pimentel and his counsel, Miles Clark, about the terms of the plea agreement. The court asked Pimentel whether he initialed the boxes on the plea form "after discussing each paragraph with [Clark]," and Pimentel answered, "I did." The court asked Clark whether he reviewed the consequences of the plea with Pimentel and whether Pimentel appeared to understand them, and Clark responded

admission has been convicted of a violation of (or a conspiracy or attempt to violate) any law or regulation of a State . . . relating to a controlled substance (as defined in section 802 of Title 21), other than a single offense involving possession for one's own use of 30 grams or less of marijuana." (8 U.S.C. § 1227(a)(2)(B)(i).) Cocaine is a Schedule II "controlled substance." (21 U.S.C. §§ 802(6), 812(c).)

4

affirmatively to both questions. The court asked Pimentel, "[D]o you understand if for any reason you're not a citizen of this country, conviction of this offense may result in deportation, denial of naturalization, or inability to reenter this country?" Pimentel responded, "Yes, I understand." He also confirmed he was pleading no contest "freely and voluntarily," had not been threatened, and had not been promised anything outside the plea agreement. The prosecutor and Clark stipulated the police report and the preliminary hearing transcript provided a factual basis for Pimentel's plea. The trial court found there was a factual basis for the plea; Pimentel "freely, voluntarily, knowingly, and intelligently waive[d]" his trial-related constitutional rights; and he "underst[ood] the nature of the charges, the consequences of the plea, and the range of penalties."

On November 27, 2007, the trial court sentenced Pimentel to prison for the seven-year term to which the parties had stipulated in the plea agreement and dismissed the remaining charges and allegations. Upon release from prison, Pimentel was detained and, after removal proceedings, deported to Mexico. He reentered the United States and in 2012 was convicted of unlawful reentry, sentenced to federal prison for 30 months, and deported again after service of the sentence.

C.    *Motion to Vacate Conviction*

On October 23, 2023, Pimentel filed a motion to vacate the conviction pursuant to Penal Code section 1473.7. He argued his conviction was "legally invalid" because Clark's failure to advise him the no contest plea would result in deportation constituted "prejudicial error damaging [his] ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequence of [the] conviction." (*Id.*, subd. (a)(1).)

5

In support of the motion, Pimentel submitted a declaration in which he stated that when he pled no contest, he had no "knowledge of the 'specific' and 'mandatory' adverse immigration consequences of [the] plea" and "didn't realize . . . that even though [he] was a legal permanent resident of the United States that [he] was going to end up being deported for this drug offense." He asserted Clark never spoke to him about his immigration status or immigration concerns, about the deportable nature of the offense to which he pled no contest, or about any alternate plea dispositions or negotiations that would not have had adverse immigration consequences. Pimentel alleged: "Had I known that my plea . . . would cause me to be deported, I would have insisted on proceeding to trial in my case even though I could be facing more time in custody." He also made many averments about his connections to the United States, including: (1) coming to the United States when he was one year old and at the time of the plea being a legal permanent resident who had been living in the United States for 30 years; (2) attending elementary, high, and technical schools in California; (3) being gainfully employed and paying federal and state income taxes; and (4) having a wife, four children, mother, and siblings who are citizens of the United States and live in California. Pimentel also submitted declarations from his wife and the attorney who prepared the motion, supportive letters from family and friends, and other documents.

The People opposed the motion to vacate the conviction. They argued Pimentel was not entitled to relief because, among other points, he acknowledged he would be deported by initialing the box next to paragraph No. 14 on the plea form, the trial court advised him of the immigration consequences of the plea, and there was no alternative plea deal that would have allowed him to avoid deportation. With their opposition, the People

6

submitted transcripts of the preliminary hearing and the change of plea hearing.

The trial court heard the motion on February 23, 2024. Pimentel did not appear and his counsel called no witnesses. The People called Clark to testify. Clark said he had no independent recollection of Pimentel's case. He stated his standard practice is to ask all clients about their citizenship and if they are not United States citizens, to "advise them that, if they do plead guilty to a felony, that is particular felonies, they will be deported." Clark said that was his practice in 2007. He testified that "if immigration is an issue," he "typically seek[s] an immigration-safe alternative plea," but he has "had cases where an immigration-safe alternative plea was not possible." Clark testified he reviews the plea form with his clients, including the handwritten and preprinted portions, and discusses with them "the paragraph containing the immigration warning." Pimentel's counsel did not cross-examine Clark.

After Clark was excused, Pimentel's counsel began his argument. The court interrupted to state the only evidence before it was Clark's testimony, and asked whether it could consider Pimentel's declaration when the People had no opportunity to cross-examine him. Counsel responded Pimentel had been deported, did not have to appear, and had submitted evidence in the form of his declaration. The court asked the district attorney whether he would stipulate to admission of the declarations and exhibits filed with Pimentel's motion. The district attorney responded in the negative. He objected to Pimentel's declaration "on due process grounds that [the People] have been denied the opportunity to cross-examine [Pimentel]," an "essential witness" who could have appeared remotely. The district attorney objected to Pimentel's wife's declaration on the grounds there was no reason she could

not testify at the hearing and the declaration was "rife with hearsay issues." Pimentel's counsel argued no stipulation from the district attorney was needed for the court to consider Pimentel's declaration, which in counsel's view sufficed to show by a preponderance of the evidence that Pimentel was not advised by Clark and did not otherwise understand that by pleading no contest to possession of cocaine for sale he would be deported.

The district attorney argued Pimentel could have appeared by videoconference and his failure to do so put the People "at the disadvantage of having not had the opportunity to cross-examine [him]." The district attorney noted that because "it's easy for a petitioner to fabricate a self-serving assertion after a conviction, . . . [c]ourts must look to contemporaneous corroborative evidence to support that assertion." That evidence, the district attorney argued, included Clark's testimony that his custom and practice when Pimentel pled guilty were to ask clients about citizenship and to advise noncitizens facing certain felony charges that they would be deported if convicted. The district attorney argued the contemporaneous evidence also included the facts that Pimentel initialed the box on the plea form next to the statement that deportation would result from a no contest plea if he were not a United States citizen and that "he did not ask for more time to talk to his attorney or seek immigration advice." From this evidence, which the district attorney described as "the best contemporaneous, corroborative evidence we have on the state of mind of [Pimentel] at that time," the district attorney concluded the immigration consequences of the plea were "not [Pimentel's] paramount concern."

After hearing the parties' arguments, the trial court denied Pimentel's motion to vacate the conviction. The court ruled that Penal Code section 1473.7 "requires an evidentiary hearing . . . . Evidence requires cross-

8

examination of witnesses. There was . . . no stipulation[ ] that the [c]ourt [could] consider documents that were submitted as part of the motion. There was no request to have [Pimentel] testify remotely. . . . [Pimentel's counsel] indicated [he had] no witnesses. I heard from the People's witness, [Clark], who testified. [¶] So the evidence that I have before me for making the decision that is required by [section] 1473.7 is [Clark's] testimony. And based on that testimony, [Pimentel] has not carried his burden."

## II.

## DISCUSSION

Pimentel raises two claims of error. First, he contends the trial court erred by refusing to consider the declarations and other documents he submitted in support of the motion to vacate the conviction. Second, Pimentel contends the court's denial of the motion was error because those documents showed he was entitled to an order vacating the conviction. He asks us to reverse the order and to remand the matter to the trial court with directions to grant the motion.

### A. *Appealability and Standard of Review*

An order denying a Penal Code section 1473.7 motion to vacate a conviction is appealable. (*Id.*, subd. (f); *People v. Vivar* (2021) 11 Cal.5th 510, 523 (*Vivar*)).) On appeal of such an order, we apply an independent standard of review. (*Vivar*, at p. 527; *People v. Abdelsalam* (2022) 73 Cal.App.5th 654, 661 (*Abdelsalam*).) Under that standard, we exercise independent judgment to determine whether the facts satisfy the rule of law. (*Vivar*, at p. 527.) We defer to factual findings based on the trial court's personal observation of witnesses, but not to those based on declarations and other documents. (*People v. Espinoza* (2023) 14 Cal.5th 311, 320 (*Espinoza*).) The ultimate

9

question for us is whether the facts sufficiently establish grounds for relief under section 1473.7. (*Vivar*, at p. 528.)

B.     *Refusal to Consider Documents Submitted in Support of Motion*

Pimentel argues the trial court "abused [its] authority in rejecting [Pimentel's] declaration and other objective documentary evidence submitted with his motion." He contends he did not have to testify at the hearing, either in person or remotely, and his declaration and other documents were acceptable forms of evidence relevant to determination of the motion. The People respond that the trial court read and considered Pimentel's declaration and other supporting documents and properly excluded them when Pimentel provided no reason he could not appear remotely to testify. Pimentel has the better argument.

A person moving to vacate a conviction based on "prejudicial error damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a conviction" based on a plea of guilty or no contest must establish such error "by a preponderance of the evidence." (Pen. Code, § 1473.7, subds. (a)(1), (e)(1).) "All motions shall be entitled to a hearing. Upon the request of the moving party, the court may hold the hearing without the personal presence of the moving party provided that it finds good cause as to why the moving party cannot be present." (*Id.*, subd. (d).) The statute thus expressly excuses the defendant's presence for good cause, but it does not specify what types of evidence the trial court may consider at the hearing. Testimony at a motion hearing may be taken by affidavit (Code Civ. Proc., §§ 2002, 2009), and a declaration under penalty of perjury is equivalent to an affidavit for that purpose (*id.*, § 2015.5). These rules of evidence apply in criminal proceedings. (Pen. Code, § 1102.) Our Supreme Court has stated

10

that on a motion under Penal Code section 1473.7, "no specific kind of evidence is a prerequisite to relief" (*Espinoza, supra*, 14 Cal.5th at p. 325), "evidence includes facts provided by declarations" (*id.* at p. 321), and sometimes "the facts derive entirely from written declarations and other documents" (*Vivar, supra*, 11 Cal.5th at p. 528). Thus, "a defendant's declaration is one form of objective evidence relevant to the prejudicial error inquiry." (*Espinoza*, at p. 322).

Based on these authorities, we conclude Pimentel's declaration and the other documents he submitted in support of his motion were acceptable forms of evidence. We also conclude there was "good cause" for his absence at the hearing. (Pen. Code, § 1473.7, subd. (d).) Pimentel's counsel advised the trial court that Pimentel had been deported. He thus could not lawfully enter the United States to appear at the hearing. (See 8 U.S.C. § 1326 [prescribing criminal penalties for entry after deportation].) Indeed, after Pimentel was deported the first time, he unlawfully reentered the United States, was convicted of unlawful entry, sentenced to federal prison, and again deported. Although it would have been preferable for Pimentel to appear at the hearing by videoconference, if possible, so that he could be cross-examined, a "court may hold the hearing without a defendant's presence if the defendant's counsel is present and the court finds good cause as to why the defendant cannot be present." (*People v. Fryhaat* (2019) 35 Cal.App.5th 969, 977.) The court therefore erred by relying on Pimentel's absence from the hearing to exclude his declaration and other documents.

That error, however, does not necessarily require reversal of the order denying Pimentel's motion to vacate his conviction. "[W]e review results, not reasoning." (*People v. Hill* (2025) 109 Cal.App.5th 274, 289.) " ' "[A] ruling or decision, itself correct in law, will not be disturbed on appeal merely because

11

given for a wrong reason.  If right upon any theory of the law applicable to the case, it must be sustained regardless of the considerations which may have moved the trial court to its conclusion." ' " (*People v. Zapien* (1993) 4 Cal.4th 929, 976.)  We thus proceed to Pimentel's second claim of error.

C.     *Denial of Motion*

Pimentel argues he established by a preponderance of the evidence that Clark's failure to advise him deportation would result from his plea of no contest to possession of cocaine for sale constituted "prejudicial error damaging [his] ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences" of the plea.  (Pen. Code, § 1473.7, subd. (a)(1).)  Based on our independent review of the record (*Vivar, supra*, 11 Cal.5th at p. 527), we reject the argument.

During the change of plea proceedings, Pimentel was advised in writing and orally that his no contest plea would result in deportation.  On the plea form he signed, he initialed a box next to the statement, "I understand that if I am not a citizen of the United States, *deportation*, exclusion from admission to the United States, or denial of naturalization *will result* from a conviction of the offense(s) to which I plead guilty/nolo contendere (no contest)."  (Italics added.)  Pimentel also initialed boxes next to statements he "can read and understand English" and his "lawyer has explained everything on this declaration to me, and I have had sufficient time to consider the meaning of each statement."  Upon inquiry by the trial court, Pimentel confirmed he had initialed the boxes "after discussing each paragraph with [Clark]," and Clark confirmed he had "review[ed] with [Pimentel] the consequences of his plea" and Pimentel "appear[ed] to understand them."  The court also asked Pimentel, "[D]o you understand if for any reason you're not a citizen of this

12

country, conviction of this offense *may result in deportation*, denial of naturalization, or inability to reenter the country?" (Italics added.) He answered, "Yes, I understand." Although advising a defendant he *may* be deported as a result of a guilty or no contest plea is inadequate when deportation is mandatory (*People v. Lopez* (2022) 83 Cal.App.5th 698, 716; *People v. Bravo* (2021) 69 Cal.App.5th 1063, 1073 (*Bravo*)), that was not the only advisement Pimentel got. The plea form he signed and initialed stated deportation "will result." "The admonition was boilerplate, but it was unequivocal and accurate." (*People v. Olvera* (2018) 24 Cal.App.5th 1112, 1117 (*Olvera*).) Moreover, Clark attested he read and explained the immigration advisement to Pimentel, and the trial court found Pimentel understood "the consequences of the plea." "Nothing about [Pimentel's] oral and written responses during the plea process indicated he was confused about the multiple advisals that he would be deported." (*Abdelsalam, supra*, 73 Cal.App.5th at p. 664.)

To counter the evidence from the change of plea process, Pimentel points to the declaration he filed in support of the motion to vacate the conviction. There he stated Clark neither spoke to him about his immigration status or concerns nor advised him the charge to which he was going to plead no contest was a deportable offense, and as a result he did not understand that even though he was a lawful permanent resident he would be deported if he entered the plea. Such "self-serving statements" are insufficient by themselves to establish error under Penal Code section 1473.7. (*Abdelsalam, supra*, 73 Cal.App.5th at p. 664.) Pimentel must "corroborate such assertions with ' "objective evidence." ' " (*Vivar, supra*, 11 Cal.5th at p. 530.) He has not submitted correspondence with Clark, Clark's files or notes, or any other contemporaneous documents concerning the immigration

consequence of the plea.  (See *Espinoza, supra*, 14 Cal.5th at p. 321; *Abdelsalam*, at p. 664.)  Clark's testimony at the hearing on the motion undermines Pimentel's assertions.  Although Clark did not specifically recall Pimentel's case, he testified his "standard practice" was to ask clients whether they were United States citizens and to advise those who were not that "they will be deported" if they plead guilty to "particular felonies."  He also testified he reviews the plea form with each of his clients and "discuss[es] the paragraph containing the immigration warning with [them]."  On this record, Pimentel has not "show[n] that he did not meaningfully understand the consequences of his plea." (*Espinoza*, at p. 319; see *Abdelsalam*, at pp. 664–665.)

## III.

## DISPOSITION

The order is affirmed.


IRION, Acting P. J.

WE CONCUR:


BUCHANAN, J.


CASTILLO, J.

14